## 41070. ENFINGER v. INTERNATIONAL INDEMNITY COMPANY.

(317 SE2d 816)

GREGORY, Justice.

We granted certiorari to review the Court of Appeals' decision in *Enfinger v. Intl. Indem. Co.*, 170 Ga. App. 443 (317 SE2d 841) (1984). The issue for our determination is whether OCGA § 33-34-5 (c) may be utilized to "cure" noncompliance with the signature requirements of OCGA § 33-34-5 (b). We answer this question in the negative and reverse.

On August 26, 1980, appellant Enfinger applied for automobile liability insurance with appellee International Indemnity Company (IIC). It is undisputed that the policy application form executed by Enfinger did not comply with the signature requirements of OCGA § 33-34-5 (b). The policy issued to Enfinger provided the minimum $5,000 personal injury protection (PIP) coverage. In an attempt to remedy its defective policy application, on September 22, 1980, IIC sent Enfinger a letter following the requirements of OCGA § 33-34-5 (c), by first class mail and postage prepaid, advising him of optional PIP coverage and the additional premiums necessary for such coverage. This letter conformed to the standards for such letters set down in *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698, 700 (310 SE2d 221) (1983). IIC received no response to this letter from Enfinger. On October 30, 1980, Enfinger was seriously injured in an automobile accident. IIC paid him the $5,000 basic PIP benefits under the policy.

In May 1982, Enfinger, through his wife, requested payment of $45,000 additional PIP benefits from IIC and tendered the required premiums. IIC denied the additional coverage and Enfinger commenced this action seeking the $45,000 additional PIP benefits, penalties and attorney fees based on the insurer's alleged bad faith refusal to pay the claim. The trial court ruled that the insurance policy issued to Enfinger provided for $50,000 PIP benefits from its inception because the IIC application form did not contain the signature spaces for the applicant to accept or reject optional coverage as required by OCGA § 33-34-5 (b); that IIC's letter of September 22, 1980, was ineffectual to constitute a rejection of the optional coverage; and that Enfinger was not entitled to penalties and attorney fees because as a matter of law there had been no bad faith refusal to pay the claim. Both parties appealed.

The Court of Appeals reversed the trial court's ruling in a 5-4 decision and held OCGA § 33-34-5 (c) could be used to cure noncompliance with the signature requirements of OCGA § 33-34-5 (b), therefore, Enfinger's failure to respond to IIC's letter of September 22, 1980, effectuated a rejection of any optional PIP coverage. We disagree.

A cardinal rule of statutory construction is that courts must look to the purpose and intent of the legislature and construe statutes so as to implement that intent. *Wilson v. Board of Regents*, 246 Ga. 649, 650 (272 SE2d 496) (1980). Therefore, we examine a portion of the history of our "no-fault" law and the decisions interpreting it to determine whether the legislature intended OCGA § 33-34-5 (c) to apply to policies issued after the effective date of the statute. The original no-fault Act, Ga. Laws 1974, p. 113, required insurers to utilize forms for application for insurance which contained separate spaces for the insured to indicate acceptance or rejection of each of the optional coverages provided for in the Act. OCGA § 33-34-5 (b). One of the required optional coverages was up to $50,000 personal injury protection. In *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), we held that a policy of insurance *issued after the effective date of the statute* provides for $50,000 PIP benefits, absent a signed rejection of the optional coverages by the insured. (Emphasis supplied.) See also, *GEICO v. Mooney*, 250 Ga. 760 (300 SE2d 799) (1983). However, the original Act failed to take into account policies which would be in existence on the effective date, March 1, 1975, since no application would be submitted on these existing policies.[1] To alleviate this oversight, in 1975 the legislature amended the statute by adding OCGA § 33-34-5 (c) which provides in pertinent part "On and after the effective date of this Act, all named insureds in existing motor vehicle liability policies who have not previously responded[2] to an offer to accept or reject the optional coverages required to be offered by this Act shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Section. . . ." We hold this section was intended to apply to policies in existence on March 1, 1975 and not those which came into existence after that date. This court recognized this was the intent of the 1975 amendment in *Wiard v. Phoenix Ins. Co.*, supra. In *Stafford v. Allstate Ins. Co.*, 252 Ga. 38 (3) (310 SE2d 917) (1984), this court explained that "OCGA § 33-34-5 (c) applies to policies in existence on March 1, 1975. OCGA § 33-34-5 (b) applies to applications for policies beginning March 1, 1975. Each category of policies is governed by the respective requirements of the statute."

The majority opinion in the Court of Appeals construed OCGA § 33-34-5 (c) so as to apply to Enfinger since he had an "existing motor

---

[1] In response to this circumstance, the insurance commissioner issued Rules and Regulations of Georgia Insurance Department, Chapter 120-2-28, pp. 351-354, which required a mailing to existing named insureds giving notice that $50,000 PIP coverage would be provided unless rejected.

[2] The legislature took into account that some insureds would have previously responded to the letter mailed out pursuant to the commissioner's regulation.

vehicle liability" policy "after March 1, 1975" and had "not previously responded to an offer to accept or reject the optional coverages required to be offered." While we agree the words of this section are susceptible to such a construction, we believe the legislature did not intend the section be given such a broad application. To hold otherwise would circumvent the signature requirements of OCGA § 33-34-5 (b) and this court's decision in *Flewellen v. Atlanta Cas. Co.*, supra. We, therefore, reverse and remand for further disposition not inconsistent herewith.

*Judgment reversed and remanded. All the Justices concur, except Marshall, P. J., who concurs in the judgment only.*

DECIDED JUNE 29, 1984 — REHEARING DENIED JULY 25, 1984.

*Kirbo & Conger, Ben Kirbo*, for appellant.
*Gurley & Fowler, Michael L. Wetzel*, for appellee.
*Robert M. Darroch, Richard T. Gieryn, Jr.*, amici curiae.