41194, 41347. RANSOM v. RANSOM (two cases).
(324 SE2d 437)

PER CURIAM.

While husband and wife were residing together, husband tape-recorded telephone conversations wife conducted in the marital residence, concededly without wife's consent or knowledge. Wife subsequently filed suit for divorce. During discovery she became aware for the first time that husband possessed tape-recordings of her telephone conversations and intended to use them at the divorce trial to prove her infidelity during the marriage. Wife then filed a motion in limine, on the basis of OCGA §§ 16-11-62 (1) and 16-11-67, to prevent the admission of these tapes or their contents at trial.

OCGA § 16-11-62 (1) provides, "It shall be unlawful for: (1) Any person in a clandestine manner intentionally to overhear, transmit or record, or attempt to overhear, transmit or record, the private conversations of another which shall originate in any private place."

OCGA § 16-11-67 provides, "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part."

The trial court entered an order prohibiting use of the contents

of the tape for any purpose except impeachment.

Both husband and wife filed applications for interlocutory appeal which this court granted. In case no. 41194, wife appeals that portion of the trial court's order allowing use of the tapes at trial for impeachment purposes. In case no. 41347, the husband contests the trial court's ruling that no use may be made at trial of the tapes except for impeachment.

1. We must first decide whether the legislature intended for OCGA § 16-11-62 (1) to apply to a situation where one spouse tape-records the private conversation of the other spouse, without the latter's knowledge or consent.

Husband points out that at least one court has recognized an implied exemption for domestic situations from the federal wiretapping statute, 18 USC § 2511,[1] and argues that similar policy considerations

---

[1] 18 USC § 2511 (1) provides:
"Except as otherwise specifically provided in this chapter any person who -

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when -

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire connection; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or

(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years, or both."

In Simpson v. Simpson, 490 F2d 803 (5th Cir. 1974), the Fifth Circuit recognized that "The naked language of Title III, by virtue of its inclusiveness, reaches [the situation where one spouse records the telephone conversations of the other without knowledge or consent]. However, we are of the opinion that Congress did not intend such a far-reaching result, one extending into areas normally left to states, those of the marital homes and domestic conflicts." 490 F2d at 805. See generally Baumrind v. Ewing, 279 SE2d 359 (SCt. S.C. 1981), following Simpson. Simpson has, however, been criticized in a number of other jurisdictions, which have held that 18 USC § 2511 applies to domestic situations. See United States v. Jones, 542 F2d 661 (6th Cir. 1976); Heyman v. Heyman, 548 FSupp. 1041 (N.D. Ill. 1982) (on appeal to 4th Cir.); Gill v. Willer, 482 FSupp. 776 (W.D. N.Y. 1980); Kratz v. Kratz, 477 FSupp. 463 (E.D. Pa. 1979); Stamme v. Stamme, 589 SW2d 50 (Mo. App. 1979). For com-

should apply to create a spousal exception to OCGA § 16-11-62.

"A cardinal rule of statutory construction is that courts must look to the purpose and intent of the legislature and construe statutes so as to implement that intent." *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185 (317 SE2d 816) (1984); *Wilson v. Bd. of Regents*, 246 Ga. 649, 650 (272 SE2d 496) (1980). OCGA § 16-11-62, formerly Code Ann. § 26-2002, was enacted in 1967. Former Code Ann. § 26-2001, Ga. L. 1967, pp. 844, 845 states the purpose of Code Ch. 26-20, relating to the offenses of "peeping tom" and eavesdropping. "It is the public policy of this State and the purpose and intent of this Chapter to protect the citizens of this State from invasions upon their privacy. This Chapter shall be construed in light of this expressed policy and purpose. The employment of devices which would permit the clandestine overhearing, recording or transmitting of conversations or observing of activities which occur in a private place has come to be a threat to an individual's right of privacy and, therefore, should be prohibited. It is further the purpose of this Chapter to provide to authorized law enforcement officers modern methods of crime detection and prevention under strict procedures and safeguards."

Code Ann. § 26-2002 was recodified without substantial change as Code Ann. § 26-3001 with the revision of the Criminal Code of Georgia in 1968. In 1976 that section was amended "to provide that certain activities shall not be unlawful," Ga. L. 1976, p. 1100, § 1. Neither eavesdropping nor wiretapping in a domestic situation were listed among these exclusions.

We conclude from our reading of this legislative history that the legislature intended for the statute to apply to protect *all* persons from invasions upon their privacy, including invasions made upon the privacy of one spouse by the other in a private place. The legislature has not drawn an exception from the statute's prohibition for one who, in a clandestine manner, records the private telephone conversations of his spouse which occur in a private place, and we decline to do so.

2. Husband also argues that wife has waived her right of privacy by conducting lascivious conversations in the marital home. Pretermitting a determination of whether, under the circumstances suggested by husband, one may waive his or her right of privacy, we note that the record in this case does not disclose the contents of the tape recordings. We are unable to say on the record before us that wife waived her right of privacy.

3. Wife's sole complaint is the trial court erred in ruling that the

---

mentaries criticizing Simpson, see 12 Valpariso University Law Review 537 (1978); 27 Buffalo Law Review 155 (1977); 12 Creighton Law Review 1209 (1979).

contents of the tape recordings could be used for impeachment purposes as OCGA § 16-11-67 states, "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part." We agree. The statute provides, without exception, that *no evidence* shall be admissible in *any* court except to prove a criminal violation of an offense proscribed in OCGA § 16-11-60 through § 16-11-69. The " 'language [of the statute] being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.' " *Hollowell v. Jove,* 247 Ga. 678, 681 (279 SE2d 430) (1981). We hold, therefore, that the trial court erred in ruling that the contents of the tape recordings might be used for impeachment purposes.

*Judgment affirmed in case no. 41347. All the Justices concur. Judgment reversed in case no. 41194. All the Justices concur, except Marshall, P. J., and Gregory, J., who dissent.*

DECIDED JANUARY 7, 1985.

*Surrett, Choate & Walker, Carl J. Surrett,* for appellant.
*Michael C. Garrett, I. Seamon Williams,* for appellee.

GREGORY, Justice, dissenting.

While I agree with the result reached by the majority in case no. 41347, I respectfully dissent to the result reached in case no. 41194 (Division 3).

In Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971), the United States Supreme Court ruled that a statement made by a criminal defendant which was inadmissible because it violated Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), could nonetheless be used to impeach the defendant if he testified to the contrary at trial. In United States v. Havens, 446 U. S. 620 (100 SC 1912, 64 LE2d 559) (1980), the Court held that evidence illegally seized from a criminal defendant in violation of the Fourth Amendment and suppressed from the government's case-in-chief could be used to impeach that defendant at trial. The Court held that the ends of the exclusionary rules of Miranda and the Fourth Amendment were "adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies [is] deemed insufficient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the factfinding goals of the criminal trial." 446 U. S. at 627. The Court noted that the shields provided by these exclusionary rules should not "be perverted into a license to use perjury

by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U. S. at 226.

I recognize that in both Harris and Havens, the Supreme Court was dealing with judicially created exclusionary rules and was, therefore, free to fashion the limitations on these rules. I acknowledge that this court is here presented with a statute which, on its face, purports to exclude any use of evidence obtained in violation of OCGA § 16-11-62 in any court proceeding except, in the circumstances of this case, a trial of an offense under OCGA § 16-11-62. But, I also note the statute fails to directly deal with the question of use for impeachment purposes only. It is the function of this court under these circumstances to find the purpose and intent of the legislature in enacting this statute. *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185 (317 SE2d 816) (1984).

I would hold that in enacting OCGA § 16-11-62 the legislature intended to deter those who sought to invade the individual's right to privacy. See Ga. L. 1967, pp. 844, 845, former Code Ann. § 26-2001, quoted in the majority opinion. In enacting OCGA § 16-11-67 the legislature effected an additional deterrent to those who sought to obtain evidence in violation of OCGA § 16-11-62. I do not believe, however, that the legislature intended for this latter deterrent to hinder the fact-finding process at trial, to the extent that one may testify freely and in conflict with prior statements without encountering efforts at impeachment by use of those prior statements. Supporting this conclusion is the fact that the legislature made available two specific remedies for the conduct proscribed in OCGA § 16-11-62: Criminal prosecution under that statute and suppression of the illegally obtained evidence in the case-in-chief of any other proceeding. Any additional deterrence to those who would violate OCGA § 16-11-62 by excluding the use of the evidence for impeachment purposes would be minimal, but the detrimental impact on the fact-finding process at trial if this exclusion is permitted could be significant. I am convinced that in balancing the need to find the truth at the trial of the issues, the legislature intended for the latter to prevail under these circumstances.

I would hold, therefore, that while the tape-recordings husband obtained in violation of OCGA § 16-11-62 may not be used in his case-in-chief, he may use them to impeach wife's testimony at trial if she takes the stand and makes statements inconsistent with the tape-recorded conversations.

I am authorized to state that Presiding Justice Marshall joins in this dissent.