Penny M. TATUM, f/k/a Penny M. Thompson, Plaintiff-Appellant,

v.

DAIRYLAND INSURANCE COMPANY, Defendant-Appellee.

No. 85-8958.

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1986.

L. Zack Dozier, Macon, Ga., for plaintiff-appellant.

Richard B. Eason, Jr., Atlanta, Ga., for defendant-appellee.

Before KRAVITCH, CLARK and EDMONDSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Tatum appeals from the district court's grant of summary judgment on her claim of right under Georgia law to optional no-fault personal injury protection (PIP) on her automobile insurance policy with appellee Dairyland Insurance Company. The sole issue on appeal is whether appellee's offer of optional PIP was in substantial compliance with the requirements of O.C.G.A. § 33-34-5(b). We hold that appellee's application form was not in substantial compliance with Georgia statutory requirements and that appellant has the right to claim the optional benefits.

The undisputed facts in this case indicate that appellant executed the application at issue in April 1979. The application (Appendix I) included a section labeled "Optional No-Fault Coverage Benefits," which appellant signed just below printed language that stated "I have read and understood the offer to purchase additional coverages as set forth above, and hereby *reject* all additional coverages that have not been marked *Accept*" (emphasis in original).

Appellant was injured during the policy period in two automobile accidents in September and October 1980. After the September accident, Dairyland paid Tatum a

total of $2,590.24 for lost wages and medical expenses. Following the October accident, Dairyland paid Tatum $5,000 in benefits for lost wages and medical expenses and then notified her that no further benefits would be paid because $5,000 was the policy limit. Tatum's claims for additional benefits arising out of her October accident and her tender of an additional premium for $50,000 in retroactive PIP coverage were rejected.

In June 1982, appellant filed suit in Georgia state court seeking retroactive PIP coverage for unpaid medical bills and lost income. Appellant also sought attorney fees, statutory penalties and punitive damages. Dairyland removed the case to the United States District Court on the basis of diversity of citizenship. Dairyland continued to decline to extend any additional PIP coverage to Tatum.

In March 1983, after the decision in *Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709, 300 S.E.2d 673 (1983), Dairyland offered to extend optional benefits upon proof of loss. Appellant declined the offer because she objected to the quoted premium amount for the additional coverage. In April 1983, Dairyland sent appellant a check for $3,098.73 with a letter indicating that the payment was for optional benefits after taking credit for prior payments and the quoted premium. Appellant returned this check because, in her view, the amount was improperly calculated. After a series of correspondence as to why the amount was or was not proper, appellant accepted a check for the same amount along with a letter from appellee stating that negotiation of the check would be without prejudice to appellant's claims for additional benefits.

Both sides moved for summary judgment and the district court, relying upon *St. Paul Fire & Marine Insurance Co. v. Nixon*, 252 Ga. 469, 314 S.E.2d 215 (1984), granted summary judgment for defendant Dairyland. Tatum appealed.

Georgia law requires that motor vehicle insurers offer a minimum of $50,000 in optional PIP coverage. O.C.G.A. § 33–34–5(a). Although the statute allows applicants to reduce the coverage to no less than $5,000, appellant has the right under Georgia law to $50,000 PIP coverage unless in Dairyland's insurance application "optional coverages were expressly offered to, and knowingly rejected in writing" by the insured. *Jones v. State Farm Mutual Automobile Insurance Co.*, 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed*, 248 Ga. 46, 280 S.E.2d 837 (1981); *Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709, 300 S.E.2d 673 (1983); *Tolison v. Georgia Farm Bureau Mutual Insurance Co.*, 253 Ga. 97, 317 S.E.2d 185 (1984). Failure to reject the optional coverages in the manner provided in the statute forms a contract for $50,000 PIP coverage from the inception of the contract. *Flewellen*, 250 Ga. at 714, 300 S.E.2d at 678. The offer and knowing rejection in writing must appear on the face of the application itself; oral communications have no relevance to the insured's right to recover optional PIP benefits. *See Voyager Casualty Insurance Co. v. Colwell*, 166 Ga.App. 17, 303 S.E.2d 152, *modified*, 251 Ga. 744, 309 S.E.2d 617 (1983).

Dairyland contends that summary judgment was properly granted in its favor because Dairyland's application satisfied statutory requirements as articulated in *St. Paul Fire & Marine Insurance Co. v. Nixon*, 252 Ga. 469, 314 S.E.2d 215 (1984) (see Appendix II).[1] In *Nixon*, the Georgia Supreme Court held that an application form satisfies the statutory requirements where: (1) the form is in substantial compliance with the statutory requirement; and (2) the form satisfies the intent of the Georgia legislature to ensure that insurers offer optional coverages to applicants and that an applicant's waiver of his privilege to obtain optional coverages be made knowingly and in writing. *Id.* at 470, 314 S.E.2d at 217. *Nixon* made it clear that *Flewellen* did not hold that separate signatures for acceptance or rejection of each of the optional coverages are mandatory. Instead,

---

1. The *Nixon* form appears at 175 Ga.App. 460, 333 S.E.2d 638.

*Flewellen* only indicated that the statutory requirements are satisfied by separate signatures.

Dairyland concedes that its application form did not completely comply with section 33–34–5(b).[2] In its applicable form,[3] section 33–34–5(b) states: "Each application for a policy of motor vehicle liability insurance sold in this state must contain *separate spaces* for the insured to indicate his acceptance *or rejection* of each of the optional coverages...." (emphasis added). Dairyland's application form had separate spaces for the applicant to indicate acceptance of any of the optional coverages but no separate spaces to indicate rejection of any of the optional coverages. Rejection of the optional coverages on the Dairyland application was done simply by signing below the preprinted language regarding rejection.[4]

**2.** We respectfully disagree with the dissent's attempt to apply the standards of O.C.G.A. § 33–34–5(c) to this case. The dissent admits that O.C.G.A. § 33–34–5(b) is applicable to all insurance policies issued after March 1, 1975, and that O.C.G.A. § 33–34–5(c) applies only to policies already in existence on March 1, 1975. It is undisputed that appellant's policy was executed in April 1979.

Nothing in our decision in *State Auto. Mut. Ins. Co. v. Horne,* 794 F.2d 621 (11th Cir.1986), indicates that the standard of review under these two statutory sections is the same. *Horne* involved a question of substantial compliance with O.C.G.A. § 33–34–5(b). We found the form in *Horne* was in substantial compliance because: the form was on a separate page; spaces for rejection of each of the options was provided; and there was a signature space at the bottom which was in addition to the signature space for the general portion of the application. *Id.* at 623. Although the *Horne* court did indicate that, in the circumstances of that case, the form reasonably evinced the insured's awareness of and rejection of his right to optional coverages, we cannot agree that this is an indication that O.C.G.A. § 33–34–5(b) and O.C.G.A. § 33–34–5(c) are to be governed by the same standards. The fact that this general statement of the goal of O.C.G.A. § 33–34–5(b) bears some resemblance to the language in O.C.G.A. § 33–34–5(c), does not mean that the scrutiny required by the two subsections is identical.

In fact, Georgia law is contrary to the dissent's view of the statutory standards. First, there are important differences in the language of O.C.G.A. § 33–34–5(b) and (c). O.C.G.A. § 33–34–5(b) states unequivocally that "[e]ach application for a policy of motor vehicle liability insurance sold in this state *must contain separate spaces* for the insured to indicate his acceptance *or rejection* of each of the optional coverages." O.C.G.A. § 33–34–5(c) contains no similar language regarding separate spaces. Section 33–34–5(c) requires only that "all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter *shall be given an opportunity to accept or reject, in writing,* the optional coverages required to be offered...." Second, Georgia courts have rejected the argument that post–1975 policy applications that do not meet the requirements of § 33–34–5(b) can be deemed legally adequate by virtue of compliance with § 33–34–5(c). *See Enfinger v. Int'l Indem. Co.,* 253 Ga. 185, 317 S.E.2d 816 ("OCGA 33–34–5(c) applies to policies in existence on March 1, 1975. OCGA § 33–34–5(b) applies to applications for policies beginning March 1, 1975. *Each category of policies is governed by the respective requirements of the statute.* "), cert. denied, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 360 (1984); *Rosser v. Int'l Indem. Co.,* 173 Ga.App. 342, 326 S.E.2d 543 (1985) ("appellee's compliance with [pre–1982] OCGA § 33–34–5(c) does not operate as a curative mechanism for the legally insufficient application form, since the policy at issue came into existence after March 1, 1975"). We therefore decline to depart from Georgia law indicating that the more relaxed standard of O.C.G.A. § 33–34–5(c) does not apply to post–1975 policies. As the dissent points out, it is our duty to apply the standards announced by the Georgia courts, and not apply one of our own making.

The dissent's reliance upon *United Services Auto. Ass'n v. Ansley,* 254 Ga. 647, 333 S.E.2d 579 (1985), is misplaced because it rests upon the erroneous legal premise discussed above. The fact that the pre–1975 application forms in *Ansley* were found to satisfy the less stringent standard of O.C.G.A. § 33–34–5(c) is of little relevance to our decision in this case. Moreover, the form in *Ansley* did contain a separate space for the insured to check to indicate rejection of optional coverages. If the insured did not check this box and simply signed the application, the policy would be issued with $45,000 personal injury protection. The application in *Ansley* was thus different from that involved in this case because, in *Ansley,* a waiver of optional coverages could be accomplished only by the affirmative act of checking the rejection box, and not simply by signing the application form.

**3.** O.C.G.A. § 33–34–5(b) was amended, effective November 1, 1982.

**4.** The preprinted rejection language stated: "I have read and understand the offer to purchase additional coverages as set forth above, and hereby *reject* all additional coverages that have not been marked *Accept.*"

We cannot accept Dairyland's position that, even in the absence of separate spaces for rejection of optional coverages,[5] the application form substantially complied with statutory requirements. Separate spaces for rejection are expressly required by the statute for good reason. The legislative intent of ensuring that an applicant's waiver of his privilege to obtain optional coverages be made knowingly and in writing is violated where nothing more than a single signature is made at the bottom of the optional coverage section. Although multiple signatures are not required, separate spaces to indicate rejection make it significantly more likely that an applicant will be aware of what is being offered and rejected.

Post-*Nixon* Georgia cases considering the question of whether particular application forms substantially comply with section 33–34–5(b) support our conclusion. The cases have identified several factors that are influential in determining whether the particular application form substantially complies with the statutory requirements and purposes. These factors include: (1) whether the offer of additional coverages is contained on a separate page, *Tolison v. Georgia Farm Bureau Mutual Insurance Co.*, 253 Ga. 97, 100, 317 S.E.2d 185, 188 (1984) (see Appendix III);[6] (2) whether the fact that optional coverages are being offered is prominently displayed by a clear heading, *Associated Indemnity Corp. v. Sermons*, 175 Ga.App. 513, 515, 333 S.E.2d 902, 905 (1985) (see Appendix IV);[7] (3) whether optional coverages are presented in clear and easily readable sentences rather than by abbreviations without explanations, *Tolison*, 253 Ga. at 100, 317 S.E.2d at 188, *Douglas v. Jefferson-Pilot Fire & Casualty Co.*, 175 Ga.App. 457, 458, 333 S.E.2d 634, 636 (see Appendix V),[8] and (4) whether the marks in the rejection boxes are handwritten rather than typewritten, *Sermons*, 175 Ga.App. at 515, 333 S.E.2d at 905.

The offer of optional no-fault coverage benefits in this case had several of the deficiencies identified in these cases. The offer of optional coverages is not on a separate page. The offer is contained in a small box about three-fourths down the second page of the application. The printed offer and the preprinted rejection language is in very small print. No explanatory language is provided to clarify the short phrases used to describe the options.

Dairyland's contention that the application form in this case complied with the statutory requirements as substantially as did the form in *Nixon* is without merit. The form in *Nixon* had a separate space for the insured to check, indicating "I do not want to purchase Optional Personal Injury Protection Coverage." In addition, the form was on a separate page and the offered optional coverages were prominently displayed and described with complete sentences.

Our recent decision in *State Automobile Insurance Co. v. Horne*, 794 F.2d 621 (11th Cir.1986), is in accord. In *Horne*, we found that the application form's offer of optional coverages was in substantial compliance with Georgia statutory requirements because the form reasonably evidenced the insured's awareness of and rejection of his rights. We found the form in *Horne* to be similar to that in *Nixon* in that the form "is on a separate page, displays the optional coverages required to be offered, provides separate clauses and *spaces for rejection of each of the options*, and has a signature line at the bottom, which is in addition to the signature space for the general portion

---

5. Given that the application form in this case lacked *any* separate spaces for the insured to indicate rejection of optional coverages, we do not address the question of whether a similar form might substantially comply with the statutory requirements if the form had a single separate space for the insured to indicate rejection of all optional coverages.

6. The *Tolison* form appears at 175 Ga.App. 520, 333 S.E.2d 909.

7. The *Sermons* form appears as Appendix I to the court's opinion.

8. The *Douglas* form appears as Appendix I to the court's opinion.

of the insurance application." *Id.* at 623 (emphasis added).

No decision of this court or the Georgia courts has held that an application form can still substantially comply with the statutory requirements despite the absence of separate spaces for rejection of optional coverages. Because we find this statutory requirement to be fundamental to fulfilling the legislative purpose of obtaining a knowing written waiver and because the offer in this case contained other deficiencies in its presentation of the options, we hold that the application at issue did not substantially comply with the statutory requirements. Accordingly, we REVERSE the judgment of the district court and REMAND the case with instructions to enter summary judgment for appellant on the issue of liability and to proceed to trial on the damages issues.

# APPENDIX I
## Dairyland Insurance Company
6 Executive Park East P.O. Box 102049 Atlanta, Georgia 30348

**Georgia**
**Automobile Insurance**
**Application**

| | State No. | Policy No | Agent No |
|---|---|---|---|
| Car 1 | 9 | | |
| Car 2 | | | |

Type or Print with Black Ink

**1. Coverage to be effective:** Date: [ MO | DAY | YR ] Time: _____ ☐ AM ☐ PM

**2. Named Insured:** _____ (Last) _____ (First) _____ (Full Middle)

Address: _____ (Street Number, RFD, City, County) _____ GEORGIA _____ Zip Code

Home Phone No.: _____ Business Phone No.: _____

Does insured reside at above address during work week? ☐ Yes ☐ No If no, explain. _____

Occupation: _____ Employer: _____ City or Military Base: _____

Sex: ☐ Male ☐ Female Date of Birth [ MO | DAY | YR ] Marital Status _____ Living with Spouse? ☐ Yes ☐ No

Driver's License No.: _____ State: _____

**3. All other drivers (Must include spouse even if license is suspended):**

| Name | % of driving Car 1 | Car 2 | Sex M | F | Birth Date Mo | Day | Yr | Marital Status | Living with Spouse? | Driver's License Number If another State, indicate |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**4.** Are any other members of the household under age 25? ☐ Yes ☐ No If so, list ages: _____

**5.** If SR-22 Filing required, for whom? _____ State and Case No.: _____

**6. Description of vehicle:**

Owner Car 1 _____ Address _____
Owner Car 2 _____ Address _____

| Car | Year | Trade Name | Body Type | Serial Number | Actual Cost |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |

**A.** Did agent inspect vehicle(s)? ☐ Yes ☐ No DO NOT BIND PHYSICAL DAMAGE WITHOUT INSPECTION.

List Existing Damage _____

**B.** Is vehicle(s) used commercially? ☐ Yes ☐ No If Yes, explain _____

**C.** If vehicle is a pickup, does insured own camper unit? ☐ Yes ☐ No If Yes, list cost _____

**D.** Lienholder Car 1 _____ (Name)
Address _____ (Street number, RFD City) _____ (State) _____ Zip Code
Lienholder Car 2 _____ (Name)
Address _____ (Street number RFD City) _____ (State) _____ Zip Code

**E.** Does vehicle(s) have CB Radio, Stereo, Tape Deck, Mag Wheels, or other special equipment? ☐ Yes ☐ No
No coverage for special equipment unless the value is stated below. Special equipment is anything not installed at the factory or dealership and shown on the purchase invoice as factory original equipment. No coverage available for custom paint.

**7. Coverages:**

No coverage unless checked or premium shown

| | Car 1 | Car 2 |
|---|---|---|
| Bodily Injury & Property Damage Liability and Basic Personal Injury Protection — $5,000 Limit ☐ 10/20/5 ☐ 10/20/10 ☐ 25/50/10 ☐ 50/100/25 | $ | $ |
| Additional P.I.P. $_____ Aggregate Limit (See back) | $ | $ |
| Uninsured/Underinsured Motorists ($250 Ded on PD) ☐ 10 20/5 ☐ 10/20/10 ☐ 25/50/10 ☐ 50/100/25 (See back) | $ | $ |
| Comprehensive $_____ Deductible (See back) | $ | $ |
| Collision $_____ Deductible (See back) | $ | $ |
| Special Equipment Total Value $_____ (See rate guide for charge) | $ | $ |
| Loss of Use — Insured Vehicle $10 Day ($300 Maximum) (See back) | $ | $ |
| 10,000 Accidental Death — Offer made? ☐ Yes (First named individual on policy) ☐ No | $ | $ |
| TOTAL PREMIUM | $ | $ |
| AMOUNT SUBMITTED ☐ GROSS ☐ NET | $ | $ |

**SPECIAL EQUIPMENT**

| Item | Value Car 1 | Value Car 2 |
|---|---|---|
| CB Radio and Antennas | $ | $ |
| Stereos and Tape Decks | $ | $ |
| Custom Wheels | $ | $ |
| Custom Tires | $ | $ |
| Gauges | $ | $ |
| Van and Camper Equipment (describe) | $ | $ |
| Custom Seats and Interior | $ | $ |
| Special Lights | $ | $ |
| Sun Roofs or T-Tops | $ | $ |
| Custom Decals & Pin Striping | $ | $ |
| Van & 4 Wheel Drive Spec Equip (Describe) | $ | $ |
| Other Special Equipment (Describe) | $ | $ |
| Total (Enter in Item 7) | $ | $ |

**AGENT-PLEASE COMPLETE**

| Car | Classification | Territory | Demerit Points | Car Symbol | Car Age Group | Rating Form |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |

Declarations Continued on Reverse Side

**COMPANY USE ONLY**

End 1 2 3 4 5 6 7 8 9
MVR Ordered ☐ _____
Add'l Pol _____
Batch _____ Date _____
How Paid _____ Deposit $ _____
Und By _____ Priced by _____
Date _____ Date _____

8. **Physical Impairments:** ☐ None ☐ Epilepsy ☐ Heart Attack ☐ Diabetes ☐ Loss of Limbs ☐ Other _____

9. Have you been or are you now insured with Dairyland? ☐ Yes ☐ No

If so, state policy number _____ Expiration Date _____

10. Name of previous insurance company _____

Why terminated? _____ Date terminated _____

11. **Has applicant been advised that failure to disclose all accidents and violations will jeopardize his coverage ?** ☐ Yes ☐ No

12. *Statement of all accidents and traffic violations during past 36 months for all drivers:*

NOTE: Premium is based on highest rated driver and highest rated vehicle. Do not combine points for all drivers.

| Name of Driver | Accidents and Violations | | If Accident, Check | |
| | Date | Type | At Fault | Not at Fault |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

13. **All accidents will be surcharged unless explained below:**

| Accident Date | What Happened | Were You Paid By Other Party? |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

I agree that no coverage can be bound unless I pay at least two months' premium with this application, and that coverage will be bound no earlier than the time the application is signed. I also agree that if my premium remittance is not honored by the Bank no coverage will be bound. I understand that driving records of all persons listed on this application may be checked. If the record for the rated driver differs from the information in Section 12 my premium will be adjusted and the term of the original coverage may be reduced. I will receive written notice showing the adjusted premium term or a billing for the required premium. Information concerning differences in the driving record will be furnished so these differences can be clarified.

This application is the only source of underwriting information except for Motor Vehicle Records. Careful completion of the application will insure proper rating and prompt delivery of your policy.

**MOTOR VEHICLE REPORT AUTHORIZATION**

I hereby authorize Dairyland Insurance Company to obtain from the Georgia Department of Public Safety a copy of my Motor Vehicle Report for the use in rating and/or underwriting the insurance for which I do hereby apply, and any renewal thereof. I understand that in obtaining a Motor Vehicle Report, a consumer reporting agency may be used by the insurer and I do hereby authorize such use. I hereby certify that the named drivers in my household under this policy (previously named within this application) have authorized me to consent on their/his/her behalf for the insured to obtain Motor Vehicle Report(s) for rating and/or underwriting

X

(Date) _____ (Signature) _____

**OPTIONAL NO-FAULT COVERAGE BENEFITS** *Accept*

A. Increase Personal Injury Protection to aggregate limit of: $10,000 .... ☐
$25,000 .... ☐
$50,000 .... ☐
B. No Deductible Comprehensive ....................................... ☐
C. No Deductible Collision ............................................. ☐
D. Loss of Use .......................................................... ☐
I have read and understand the offer to purchase additional coverages as set forth above, and hereby *reject* all additional coverages that have not been marked *Accept.*

X

(Date) _____ (Signature) _____

**UM/UIM REJECTION**

I have had Uninsured/Underinsured Motorists Coverage explained to me and fully understand it. I hereby reject such coverage and understand that my policy will not contain this coverage when issued or renewed. I also understand that I may add this coverage to my policy at any future date.

X

(Date) _____ (Signature) _____

I declare that no males regularly operate the automobile described in this application other than shown under Sections 2 and 3. I also understand that I will not be covered if this application contains any false statement, omission or misrepresentation that would have otherwise altered the company's evaluation of applicant.

**SIGNED:**

**Applicant:** X _____ Date _____ Time _____ ☐ A ☐ P

**Agent:** X _____ Date _____ Time _____ ☐ A ☐ P

*NOTE: Insured must sign MVR Authorization and Optional No-Fault boxes. UM/UIM Rejection must be signed only if coverage is not desired.

Agency Name _____
Agency Number _____
Address _____
City _____ Zip Code _____
Telephone Number _____

9-U-7 (8-81) 54P0 09 506

# APPENDIX II

**THE ST. PAUL**

**OFFER TO PURCHASE ADDITIONAL COVERAGE APPLICATION — GEORGIA**

**IMPORTANT NOTICE :** *This Form must be completed in its entirety. Please check the appropriate box to indicate your acceptance or rejection of the following additional coverages. This Form must be signed and returned to your agent.*

**I** **OPTIONAL PERSONAL INJURY PROTECTION COVERAGE**

[X] I do not want to purchase Optional Personal Injury Protection Coverage
[ ] I want to purchase Optional Personal Injury Protection Coverage as indicated below:

[ ] 10,000 Aggregate Limit [ ] 25,000 Aggregate Limit [ ] 50,000 Aggregate Limit

**II** **FULL COVERAGE COLLISION (Collision Coverage without deductible)**

[X] I do not want to purchase Full Coverage Collision
[ ] I want to purchase Full Coverage Collision

Present Policyholder: If you indicated you do not want to purchase Full Coverage Collision and you currently have Collision Coverage with a deductible, your Coverage will not change. If you wish to add deductible Collision to your policy or change the amount of your present deductible, you should contact your agent and he must secure your written request authorizing the change.

New Policy Applicant: If you chose not to purchase Full Coverage Collision, you can elect to purchase Collision Coverage with a deductible. This should be shown on the standard Application for Automobile Insurance Coverage, your agent asks you to complete.

**III** **FULL COVERAGE COMPREHENSIVE (Comprehensive Coverage without deductible)**

[X] I do not want to purchase Full Coverage Comprehensive
[ ] I want to purchase Full Coverage Comprehensive

Present Policyholder. If you indicated you do not want to purchase Full Coverage Comprehensive, and you currently have Comprehensive Coverage with a deductible, your coverage will not change. If you wish to add deductible Comprehensive to your policy or change the amount of your present deductible, you should contact your agent and he must secure your written request authorizing the change.

New Policy Applicant. If you chose not to purchase Full Coverage Comprehensive, you can elect to purchase Comprehensive Coverage with a deductible. This should be shown on the standard Application for Automobile Insurance Coverage your agent asks you to complete.

**IV.** **LOSS OF USE (This Coverage provides reimbursement to the Named Insured for necessary transportation expense income not exceeding $10 per day or totaling more than $300, due to the loss of use of an insured motor vehicle because of damage covered by accident to such vehicle)**

[X] I do not want to purchase Loss Of Use Coverage
[ ] I want to purchase Loss Of Use Coverage

AGENCY
NAME : Burnette Insurance Agency, Inc.

ADDRESS 5230 Jimmy Carter Blvd,

Norcross, Ga. 30093

SIGNATURE
OF INSURED

POLICY NUMBER:

DATE: 10/87

24-3 Ed. 1-75 Printed in U.S.A.

# APPENDIX III

**Application for Vehicle Insurance in the**
**GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY**

*(The form is a handwritten/typed insurance application. Legible fields include:)*

Named Insured: Harold E. Tolison
830 Linda Lane
Lithia Springs

City: Douglas
Zip Code: 30157

Effective Date: 4/17/79 Term Months: 6

Drivers: Harold, Helen

RECORDED
MAY 31 1979
DATA PROCESSING

4260168

RECEIVED APR 26 1979

## DISCLOSURE OF FAIR CREDIT REPORTING ACT

In compliance with Public Law 91-508, this Notice is to inform you that in connection with this application f t insurance with Georgia Farm Bureau Mutual Insurance Company that:

1. An investigation may be made as to your insurability, including (if applicable) information as to character, general reputation personal characteristics, and mode of living.
2. Additional information as to the nature and scope of any investigation requested will be furnished to you, upon your written request made within a reasonable period of time.

Signature of Applicant X *Helen S. Tolison* Date .... EXHIBIT "A" ........ Hour: ____ A. M. P. M.

# AGENT'S APPRAISAL FORM AND PREFERRED RISK PLAN APPLICATION

1. **STATEMENT OF ACCIDENTS.** Has the applicant or any operator been involved in an automobile accident while operating ANY automobile resulting damage to any property, including his own, or in bodily injury or death during the 36 months immediately preceding the date of this application? ☐ Yes ☐ No If "Yes", complete the following:

| Date of Accident | Name of Driver | Description of Accident | Bodily Injury or Death — Yes / No | Damage to Property (Amount) |
|---|---|---|---|---|
| | | | ☐ / ☐ | |
| | | | ☐ / ☐ | |
| | | | ☐ / ☐ | |

2. Within the last 3 years, has the applicant or any operator had any traffic violations or any accident not recorded in item 1? ☐ Yes ☐ No If "Yes", explain

| 3. Does the applicant or any operator have any physical impairment? (Amputation; deformity; uncorrected visual or hearing deficiency, Epilepsy) ☐ Yes ☐ No If "Yes" explain in remarks. | 4. Has the applicant or any operator ever had his license or vehicle plates suspended? ☐ Yes ☐ No If "Yes" explain in remarks. | 5. Has the applicant or any operator ever had a auto policy or any of his coverage: (a) cancelled? ☐ Yes ☐ No (b) declined? ☐ Yes ☐ No (c) renewal refused? ☐ Yes ☐ No If "Yes" explain in remarks. |
|---|---|---|

6. Have you or any regular driver ever been charged with RECKLESS DRIVING or SPEEDING or DRIVING WHILE DRINKING? (IF YES, explain) Yes ☐ No ☐

7. Is a financial responsibility filing (S.R.22) required for Applicant or any operator? ☐ Yes ☐ No If "Yes", no coverage can be bound

8. **TRUCK SECTION: THE FOLLOWING QUESTIONS MUST BE ANSWERED FOR ALL TRUCKS:**

(a) Combined Cost of Body and Chassis when New $

(b) USE OF TRUCK (Check one or more)
☐ For Hire*
☐ For Wholesale Delivery
☐ For Retail Delivery
☐ For Owner Exclusively
☐ Farm Use Only
☐ Passenger Transportation Only*

* Not insured by this company

(c) TYPE OF BODY
☐ Pickup
☐ Sedan Delivery
☐ Panel
☐ Flat Bed
☐ Stake
☐ Dump*
☐ Tractor
☐ Lime Spreader
☐ Van
☐ ____

(d) COMMERCIAL AUTO CLASSIFICATION
☐ LOCAL HAULING — Not regularly or frequently operated beyond a radius of 50 miles of the city of principal garaging.
☐ INTERMEDIATE HAULING — Regularly or frequently operated beyond a radius of 50 miles but not beyond a radius of 150 miles of the limits of the city of principal garage.
☐ LONG DISTANCE HAULING — Regularly, frequently operated beyond a radius of 150 miles of the limits of the city of principal garage. Do not bind coverage.

(e) Truck Class | (f) DESCRIBE USE OF VEHICLE, COMMODITIES HAULED, AND FOR WHOM

(g) Give destination of customary trips and principal cities through which truck will be operated

| (h) Is truck ever operated beyond a radius of 50 miles? | Yes | No | If answer is "YES", explain under remarks number of trips per year, destinations, and distances. |
|---|---|---|---|
| (i) Is this truck operated at night? | Yes | No | If YES, explain |
| (j) Is an ICC or Public Service filing required? | Yes | No | If YES, explain |

9. **TRAILER SECTION** (a) Is a trailer or semi-trailer used in connection with the operation of the truck? | Yes | No | % Surcharge

(b) Circle type of Trailer used: TRUCK TYPE TRAILER SEMI-TRAILER — 4 WHEEL TRAILER — 2 WHEEL TRAILER — EQUIPMENT TRAILER — POLE OR BUNK

| (c) Trailer, tonnage or mileage capacity: | Length | Make | Serial Number | Cost when new $ | Actual cost to insured $ |
|---|---|---|---|---|---|

(d) IF FIRE, THEFT, AND COLLISION COVERAGE IS DESIRED ON TRAILER — COMPLETE SEPARATE APPLICATION.

10. If insured rejects protection against uninsured motorists insurance the following must be signed:

In accordance with the provision of Section 56-407A(d) of the Georgia Insurance Code, which permits the insured named in the policy to reject the Protection Against Uninsured Motorists Insurance, the undersigned insured (and each of them) does hereby reject such insurance, being the insurance provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured; or from the owner or operator of an uninsured motor vehicle because of injury to or destruction of the property of such insured. It is further understood and agreed by the insured that this rejection of Uninsured Motorists Insurance shall apply to any and all renewals of this policy.

_____
Signature of Insured

**PROXY**

If I am accepted as a member and issued a policy, I do hereby make, constitute and appoint the Board of Directors of the Georgia Farm Bureau Federation my true and lawful attorney for me, in my name and stead, to vote for me as proxy at any annual or special meeting of members of the Ga. Farm Bureau Mutual Insurance Company, to be held at any time during my membership under the policy applied for herein, and at which I am not in attendance or represented by other proxy. I hereby grant my said attorney full power and authority to act for me in my name and stead at any meeting at which I am not present in person or represented by other proxy in the transaction of any business that may come before the meeting as fully as I could do, if personally present.

This proxy shall remain in effect year to year unless cancelled in writing by me.

Signature of Agent _____ Signature of Applicant _____ Date _____

APPENDIX IV

**Fireman's Fund American Insurance Companies** **PERSONAL AUTOMOBILE APPLICATION**

☐ YOUNG DRIVER PROFILE ATTACHED ☐ DRIVER TRAINING CERTIFICATE ATTACHED ☐ GOOD STUDENT CERT. ATTACHED

POLICY PERIOD 3-4-75 TO 9-4-75

NAME AND RESIDENCE ADDRESS OF APPLICANT
Vernon & Sammie Sermons
Route 2, Box 258
Hahira, Georgia

SOCIAL SECURITY NO. ZIP CODE 31632

AGENT OR BROKER CODE 10 185 854
Valdosta Insurance Agency
P.O. Box 1605
Valdosta, Georgia 31601

CITY AND STATE OF PRINCIPAL GARAGING — IF OTHER THAN RESIDENCE ADDRESS SHOWN

APPLICANT'S EMPLOYER — NAME AND LOCATION NO. YRS. EMPLOYED
Holiday Inn, Valdosta, Ga.

PREVIOUS INSURER AND POLICY NUMBER
none - GA-01 attached

| COVERAGES AND LIMITS OF LIABILITY | | CLASS W/CA TION | AUTO 1 | AUTO 2 | AUTO 3 |
|---|---|---|---|---|---|
| | | | 338210 | 1.75 | |
| B.I. LIABILITY | $ 10,000 EACH PERSON | | | | |
| | 20,000 EACH OCCURRENCE | | 10-4 | | |
| P.D. LIABILITY | $ 10,000 EACH OCCURRENCE | | 28 | | |
| MEDICAL PAYMENTS | $ 500 EACH PERSON | | 2 | | |
| COMP OTHER THAN COLL | ACV LESS $ DEDUCTIBLE | | | | |
| COLLISION | ACV LESS $ DEDUCTIBLE | | | | |
| TOWING | $25.00 PER DISABLEMENT | | | | |
| UNINSURED MOTORISTS | $ 10,000 EACH PERSON | | | | |
| | 20,000 EACH OCCURRENCE | | | | |

ENDORSEMENTS 100266, 100599, 100640, 100764

PAYMENT PLAN — OTHER THAN ECONOMY PLUS ECONOMY PLUS INSTALLMENTS INCEPTION $ 25 DUE IN 60 DAYS $ 22

A.D.&D. PREMIUM $
TOTAL PREMIUM $ 45.

| MODEL YEAR | TRADE NAME OF OWNED AUTO OR TRAILER | MODEL AND BODY TYPE | HORSE POWER | IDENTIFICATION NUMBER | COST NEW | YEAR |
|---|---|---|---|---|---|---|
| 68 | Chevrolet | | | 16637A180825 | | 19 |

NAMES OF ALL OPERATORS

| | MARITAL STATUS CODE | | OCCUPATION | DATE OF BIRTH | DRIVER'S LICENSE NUMBER | | | |
|---|---|---|---|---|---|---|---|---|
| applicant | M 1 | Porter | 2 23 56 | 1628285 ss 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 | X | | | |
| Brenda Joyce | F 1 | Smith Hosp. | 10 31 56 | 1932678 ss 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 | | X | | |

FACTS RESPECTING AUTO(S)

Number of miles is driven to work or to school 9
Estimated annual mileage 3500

REMARKS Sammie Sermons 23598566. We know that you generally do not write policies in 2 names like above, but this car is in both names & so is another car that we will add in April which has a lien on it & the lienholder will request Sammie's name on the policy. If you cannot do this, then write in Vernon's name only.

LIST ALL ACCIDENTS LOSSES & VIOLATIONS IN PAST 3 YEARS
none

APPLICANT'S SIGNATURE 
SIGNATURE OF AGENT OR BROKER
William T. Brigman TIME 3-5

EXHIBIT "B"
62 3

300255—3-73 PRODUCER COPY

**EXHIBIT A**

LE:MANS FUND

FIRE MAN'S FUND INSURANCE COMPANY
THE AMERICAN INSURANCE COMPANY
NATIONAL SURETY CORPORATION
ASSOCIATED INDEMNITY CORPORATION
AMERICAN AUTOMOBILE INSURANCE COMPANY

**GEORGIA SUPPLEMENTAL AUTOMOBILE APPLICATION (NO FAULT)**

| NAME OF APPLICANT/NAMED INSURED | POLICY NUMBER |
|---|---|
| VERNON & SAMMIE SERMONS | 2 8746205 ASSOC. APP. |

| | | | | EFFECTIVE DATE 3-4-75 | PREMIUM | | |
|---|---|---|---|---|---|---|---|
| | | | | | AUTO 1 | AUTO 2 | AUTO 3 |
| ☒ NEW | ☐ RENEWAL | ☐ CHANGE | | | | | |
| BASIC PERSONAL INJURY PROTECTION $5,000 EACH PERSON | | | | | $ 4 | $ | $ |
| ADDITIONAL PERSONAL INJURY PROTECTION (ADDED AMOUNT) | | | | | $ | $ | $ |
| ☐ $5,000 EACH PERSON | ☐ $20,000 EACH PERSON | | ☐ $45,000 EACH PERSON | | | | |
| LOSS OF USE COVERAGE $10 PER DAY. $300 MAXIMUM | | | | | $ | $ | $ |
| | | | | TOTAL PREMIUM | $ 4.00 | | |

**APPLICANT/NAMED INSURED'S STATEMENTS**

| | ACCEPT (PER ABOVE) | REJECT |
|---|---|---|
| ADDITIONAL PERSONAL INJURY PROTECTION | ☐ | ☒ |
| LOSS OF USE COVERAGE | ☐ | ☒ |
| FULL COVERAGE COMPREHENSIVE | ☐ | ☒ |
| FULL COVERAGE COLLISION | ☐ | ☒ |

| APPLICANT/NAMED INSURED SIGNATURE | DATE | SIGNATURE OF AGENT OR BROKER |
|---|---|---|
| Vernon Sermons | 3-4-75 | William L Brigma |

00512—1-75

## APPENDIX V

**IMPORTANT NOTICE:** If you do not desire to purchase these additional optional coverages required to be offered to you by law, you must reject these coverages in writing using the appropriate spaces below, or they will be included in your policy and an additional premium charged.

MAY 10 1918

Jefferson-Pilot Fire & Casualty Co.
or
Southern Fire & Casualty Co.

**Offer of Additional Optional No-Fault Coverage**

| | REJECT | ACCEPT |
|---|---|---|
| $10,000 PIP | ☒ | ☐ |
| $25,000 PIP | ☒ | ☐ |
| $50,000 PIP | ☒ | ☐ |
| ACV Comprehensive | ☒ | ☐ |
| ACV Collision | ☒ | ☐ |
| Loss of Use | ☒ | ☐ |

Applicant's Signature

---

EDMONDSON, Circuit Judge, dissenting.

I respectfully dissent.

The application form before the court reasonably evidences the insured's awareness of and rejection of her right to optional no-fault coverages. Therefore, I think the form substantially complies with the requirements of O.C.G.A. sec. 33–34–5(b).

Strict adherence to the terms of O.C.G.A. sec. 33–34–5(b) is not required.[1] Georgia's state supreme court has held that the requirements of O.C.G.A. sec. 33–34–5(b) are satisfied by "substantial compliance" therewith. Substantial compliance is inherently a flexible standard. Needless to say, Georgia's high court could have adopted a more particularized standard; but it chose not to do so. Consequently, federal courts called upon to apply Georgia law must be on guard against developing their own overly particularized test for Georgia. To the extent that the majority sees separate spaces to be checked for rejection of optional coverages as essential, I fear they have actually developed a standard that is more particularized than Georgia's highest court has stated is proper.

*St. Paul Fire & Marine Ins. Co. v. Nixon,* 252 Ga. 469, 314 S.E.2d 215 (1984), and the other cases cited by the majority exemplify substantial compliance; they do not define the limits of substantial compliance.

---

1. While it is plain that O.C.G.A. sec. 33–34–5(b) requires "separate spaces ... for each of the optional coverages," it is not clear that it requires a separate space to be checked for acceptance and a separate space to be checked for rejection of each coverage. The application in this case provides a separate space for each optional coverage; Georgia's state supreme court has never required more. The form here, therefore, may not only substantially comply, but also literally comply with the statute in respect to the spaces that are required.

As noted in *Nixon* and later cases, the "substantial compliance" test was first stated in a special concurrence by Chief Justice Hill in *Nalley v. Select Ins. Co.*, 251 Ga. 722, 723, 313 S.E.2d 465, 465–66 (1983). *See Tolison v. Georgia Farm Bureau Mut. Ins. Co.*, 253 Ga. 97, 99, 317 S.E.2d 185, 187 (1984); *Nixon* at 470, 314 S.E.2d at 217. In *Nalley*, the application form that Chief Justice Hill concluded materially complied with statutory requirements had no separate spaces to be checked for rejection of optional coverages.

Our court has previously said that an application form is in substantial compliance with the demands of O.C.G.A. sec. 33–34–5(b) "if it reasonably evidences the insured's awareness of and rejection of his right to optional no-fault coverages." *See State Auto Mutual Ins. Co. v. Horne*, 794 F.2d 621, 623 (11th Cir.1986). The meaning of our words seems materially similar to that of O.C.G.A. sec. 33–34–5(c), which provides that all named insureds in policies existing on March 1, 1975, "be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section."[2] In discussing that language of subsection (c), the Supreme Court of Georgia stated unequivocally, "The fact that we have stated that a block to be checked for each option is adequate does not mean that such blocks are required." *United Servs. Auto. Ass'n v. Ansley*, 254 Ga. 647, 649, 333 S.E.2d 579, 581 (1985) (form revealed knowing waiver of PIP benefits). *Ansley* shows that Geor-

gia's highest court recognizes that an insured can, in fact, knowingly reject the right to optional no-fault coverages even if there are no separate spaces to accept or reject each optional coverage.[3] Consequently, the absence of separate blocks or spaces on forms seems less important to Georgia's supreme court than the majority in this case believes.

In its original size, the blank form in this case (Appendix I) is not hard to read due to print size or to layout. I agree that it is not as straightforward as the application in *Nixon*. *See Douglas v. Jefferson-Pilot Fire & Casualty Co.*, 175 Ga.App. 457, 459, 333 S.E.2d 634, 638 (1985). Still, *Nixon's* form is no procrustean bed for substantial compliance. Furthermore, I view the present form as very much better than the application form in *Tolison v. Georgia Farm Bureau Mut. Ins. Co.*, 253 Ga. 97, 317 S.E.2d 185. In *Tolison* the form's layout was far more jumbled, and the box concerned with PIP coverage was much less prominent than in the case here. *See Associated Indem. Corp. v. Sermons*, 175 Ga.App. 513, 517, 333 S.E.2d 902, 909 (1985). Of course, the form in *Tolison* was found not to be in substantial compliance; it seems significant, however, that two justices found even the form in *Tolison* to be in substantial compliance with O.C.G.A. sec. 33–34–5(b). *See Tolison*, 253 Ga. at 102, 317 S.E.2d at 189 (Marshall and Weltner, JJ., dissenting).

**2.** Subsection (b) of the statute applies to all insurance policies issued after the effective date of the statute, March 1, 1975. Subsection (c) applies to policies already in existence on that date. *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698, 310 S.E.2d 221 (1983); *cf. Nalley v. Select Ins. Co.*, 251 Ga. 722, 313 S.E.2d 465 (1983).

**3.** In footnote 2 of the court's opinion, my colleagues attempt to rebut my dissent by citing *Enfinger v. International Indem. Co.*, 253 Ga. 185, 317 S.E.2d 816, *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 360 (1984) and *Rosser v. International Indem. Co.*, 173 Ga.App. 342, 326 S.E.2d 543 (1985). Those cases only hold that after March 1, 1975, applications for insurance that comply not at all with O.C.G.A. sec. 33–34–35(b) cannot be salvaged by later sending to the insured a totally separate form upon

which the insured can reject or accept optional insurance coverages, even though such a practice might be adequate under O.C.G.A. sec. 33–34–35(c). These cases have nothing to do with deciding the question of whether a particular application form substantially complies with O.C.G.A. sec. 33–34–35(b).

In its opinion, the court questions the significance of *United Servs. Auto. Ass'n. v. Ansley*, 254 Ga. 647, 333 S.E.2d 578 (1985). If the test for "substantial compliance" under 33–34–34(b) is whether the application evidences awareness of and rejection of optional coverages, *Ansley* seems important for it shows that such awareness and rejection can be evidenced, in fact, without the necessity of separate spaces to be checked for rejection of optional coverages.

If read with reasonable care, an insured confronted with the pertinent form in this case would appreciate that she could have more coverage if she chose to do so. Likewise, a reasonable insured signing the form as it was marked here would know, or should know, that she was rejecting greater coverages. Thus, the form reasonably evidences the insured's awareness of and rejection in writing of her right to optional no-fault coverage; and the form is in substantial compliance. *See generally State Auto Mut. Ins. Co. v. Horne,* 794 F.2d 621 (11th Cir.1986).

Of course, our duty is to decide this case as we think the Supreme Court of Georgia would decide it. To do so, we ought to apply their announced standard and not apply one of our own making. I realize that what the Supreme Court of Georgia would really decide in this case is, given the status of Georgia's case law, unknowable. Accordingly, I admit doubt as to the correctness of my conclusion; but I would affirm the judgment of the district court.