A98A0761. KELLEY et al. v. THE STATE.
(503 SE2d 881)

RUFFIN, Judge.

A jury found Ronald Kelley guilty of child molestation and sexual battery of his 16-year-old niece. Kelley's wife, Shelley Kelley, was found guilty of invading the child's privacy. The Kelleys appealed, asserting that there was insufficient evidence to find them guilty and that the trial court erred in making several evidentiary rulings at trial. For reasons which follow, we affirm.

" 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, is a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in this light, the evidence shows that the victim was the Kelleys' niece, who had lived with them since the age of nine. She ran away from the Kelleys' home in July 1997 at the age of 16. She testified that she left the Kelleys because she was tired of Ronald Kelley touching her breasts, buttocks and the area between her legs. According to the victim, Ronald would touch her breasts while they were driving or when he walked past her in the house. The victim said that Ronald's attempts to either see her naked or touch her began when she was 14 or 15 years of age. She testified that Ronald's activities in this regard occurred frequently and that Shelley Kelley

did nothing to stop the conduct.

During her testimony, the victim recalled specific instances when Ronald allegedly touched her inappropriately. For example, the victim testified that Ronald would often walk around the house wearing no pants or shorts. When she was only nine years old, she saw Ronald nude and he made her hold his penis while he urinated. According to the victim, Ronald would often ask her to take her shirt off and would become angry and say that he would deny her presents or other items she wanted in the future if she did not comply. On one occasion, the victim was cleaning Ronald's fingernails when he asked her to take off her underwear. She exited the room and returned wearing her shorts but no underwear. As she returned to her seat to continue cleaning Ronald's nails, he moved her leg so that he could see up her shorts. According to the victim, he then reached into her shorts and rubbed her.

The victim testified that Ronald would often show her pictures of naked women in pornographic magazines and tell her that he was going to send Playboy nude pictures of the victim. According to the victim, the Kelleys left various pornographic magazines on the dining room table, in the bathroom and under the living room couch.

The victim further testified that Shelley Kelley would often shave Ronald's testicles in the living room and that Shelley would often be topless during these events. The victim also testified that Ronald asked her to shave his testicles. According to the victim, Ronald told her once that "it hurts like hell when you have a hard-on wearing pantyhose." The State admitted at trial a photograph that the victim found in the Kelleys' closet depicting Ronald Kelley with an erect penis wearing a bra and pantyhose.

Finally, approximately a week before the victim ran away from the Kelleys' home, the Kelleys allowed the victim to drink. After the victim was drunk, she said, Ronald asked her to take her clothes off and she complied. Neither Ronald nor Shelley were wearing any clothes at the time. She proceeded to sit in a child's wading pool with the Kelleys. According to the victim, she then went inside to take a shower, but due to her inebriated state, Shelley had to enter the shower with the victim to assist her. At this time, the victim recalled, Ronald came into the bathroom, reached inside the shower and began groping for the victim's and Shelley's breasts and pinching them. Although Shelley made Ronald stop touching and pinching her own breasts, she failed to take any action to prevent Ronald from pinching the victim's breasts. Later that evening, the victim was not feeling well and Shelley prepared a bath in which the victim could lay. While the victim was passed out in the bathtub, Shelley came into the bathroom and took a picture of the victim nude. This photograph was admitted into evidence at trial.

In addition to the victim's testimony, the State introduced the pornographic magazines found in the Kelleys' home, pictures of the location of those magazines in the home, the Kelleys' photograph album containing numerous pictures of the Kelleys and their friends posing nude and in various stages of dress.

A friend of the victim, Stacy Floyd, testified for the State regarding the actions taken to assist the victim in leaving home. According to Floyd, the victim said that she wanted to leave home because Ronald Kelley would make her take her clothes off and look at her. Because of these circumstances, Floyd arranged for the victim to stay with the family of Floyd's boyfriend.

The State also called deputy sheriff Glenn Presley who obtained a voluntary statement from Shelley Kelley. According to Presley, Shelley admitted that the victim complained to her about Ronald asking the victim to remove her clothes and to allow him to touch her breasts. Additionally, Shelley admitted that Ronald read pornographic magazines and kept the magazines in the house. Finally, Shelley stated that she took a picture of the victim nude in the bathtub. Presley testified that Ronald Kelley gave Presley the camera containing the film on which Shelley Kelley had taken the photograph of the victim. Presley had the film developed.

The defendants both testified at trial. Ronald testified that he never insisted that the victim walk around the house nude, that he never intentionally touched her, never asked her to remove her underwear, and never showed her pornographic magazines. According to Ronald, he shaves his groin area once a year because of his sensitivity to rashes. He further asserted that the only time he is nude in the house is when he is in his room just prior to taking a shower. Ronald testified that the victim attempted to see him naked and that she cleaned his fingernails on occasion because she had nothing to do.

Shelley Kelley testified that she walked around the house nude at times in order to please Ronald, but only did so when the victim was not present. According to Shelley, the victim never complained about Ronald touching the victim. Shelley testified that on one occasion Ronald did tell the victim to take her bra off, but that was only because Ronald was tired of hearing the victim complain about the tightness of the bra. According to Shelley, on the afternoon they were outside sitting in the wading pool, the victim was drunk and voluntarily walked out of the house nude. Shelley admitted taking a photograph of the victim in the bathtub, but said she did this in order to show the victim what happened when one drank too much.

1. Ronald Kelley's child molestation conviction was based on his conduct of fondling the victim's breasts during the time that she lived with the Kelleys. Ronald's sexual battery conviction was based on his

conduct of intentionally making physical contact with the victim's breasts approximately a week before the victim ran away.

After reviewing the evidence in the light most favorable to support the jury's verdict, we conclude that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Ronald Kelley was guilty of sexual battery and child molestation. *Jackson*, supra. Conflicts in the testimony of the victim and the Kelleys were matters of credibility for the jury to resolve, and there was competent evidence to support each element of the State's case. *Howard*, supra.

2. The invasion of privacy charge against Shelley Kelley was premised on her violation of OCGA § 16-11-62 (2), which provides that it is unlawful for "[a]ny person, through the use of any instrument or apparatus, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view. . . ." Shelley's conviction on this count was based on her admitted conduct of taking a photograph of the minor victim while the victim was passed out nude in the bathtub.[1] Shelley Kelley argues on appeal that she only violated the law "in a technical sense" because she never had the film developed and never showed the photograph to anyone.

We find that the fact the film was not developed or the photograph shown to others is of no consequence. OCGA § 16-11-62 (2) does not require that photographs be developed to complete the offense of invasion of privacy. Nor is a conviction under the Code section dependent upon showing the photographs to others. Id. However, an issue exists whether the victim was in a "private place" pursuant to OCGA § 16-11-62 (2). OCGA § 16-11-60 (3) defines "private place" as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." Accordingly, the question is whether the victim could reasonably expect to be safe from intrusion or surveillance by her legal guardian in the family home. As there is a lack of authority addressing a minor's right to privacy in a bathroom in the familial home as against her parents or legal guardians, we look to authority addressing the similar right to

---

[1] There was clearly no consent as the minor victim was passed out and so we do not reach the issue of whether the victim had the capacity to consent in this situation. However, we note that while children in Georgia remain minors until they reach 18 years of age (OCGA § 39-1-1), they can consent to sexual intercourse at the age of 16. See OCGA § 16-6-3. Moreover, minors can enter into contracts, although the contracts are voidable. OCGA § 13-3-20. And, minors can draft wills once they turn 14 years of age. OCGA § 53-4-10. Given that the Georgia legislature has determined that minors upon reaching a certain age are capable of understanding and comprehending the ramifications of making a will and having sexual intercourse, it is certainly possible that a 16-year-old minor would have the capacity to consent to having her legal guardian take a nude photograph of her.

privacy of private telephone conversations made in the home.

" 'In 1968, the Congress enacted the Omnibus Crime Control and Safe Streets Act, a portion of which dealt with the interception and disclosure of wire or oral communications. 18 USCA § 2510 et seq. [Title III].' " *Evans v. State*, 252 Ga. 312, 315 (314 SE2d 421) (1984). Title III provided for concurrent state regulation of wiretaps. Accordingly, Georgia enacted OCGA § 16-11-64 (formerly Code Ann. § 26-3004). Id. OCGA § 16-11-64 is subsumed under Part 1 (Wiretapping, Eavesdropping, Surveillance, and Related Offenses), of Title 16, Chapter 11, Article 3 of the Georgia Code. And, OCGA § 16-11-62, under which Shelley Kelley was prosecuted, is also subsumed under Part 1 and is entitled "Eavesdropping, surveillance, or intercepting communication which invades privacy of another; divulging private message." It is clear that OCGA § 16-11-62 is closely related to OCGA § 16-11-64 and Title III concerning eavesdropping and surveillance.

Regarding interspousal wiretapping, the Fourth, Eighth, Tenth and Sixth Circuits have ruled that Title III prohibits interspousal wiretapping within the marital home. See *Heggy v. Heggy*, 944 F2d 1537 (10th Cir. 1991); *Kempf v. Kempf*, 868 F2d 970 (8th Cir. 1989); *Pritchard v. Pritchard*, 732 F2d 372 (4th Cir. 1984); *United States v. Jones*, 542 F2d 661 (6th Cir. 1976).

Furthermore, the Supreme Court of Georgia has determined, in construing OCGA § 16-11-62, that a husband is not entitled to record his wife's telephone conversations conducted in the marital residence. See *Ransom v. Ransom*, 253 Ga. 656 (324 SE2d 437) (1985). See also *Middleton v. Middleton*, 259 Ga. 41 (376 SE2d 368) (1989). In *Ransom*, the Court concluded that "the legislature intended for [OCGA § 16-11-62] to apply to protect *all* persons from invasions upon their privacy, including invasions made upon the privacy of one spouse by the other in a private place. The legislature has not drawn an exception from the statute's prohibition for one who, in a clandestine manner, records the private telephone conversations of his spouse which occur in a private place, and we decline to do so." (Emphasis in original.) *Ransom*, supra at 658.

However, there is almost a total lack of authority addressing parental wiretapping. In *Newcomb v. Ingle*, 944 F2d 1534 (10th Cir. 1991), a mother intercepted and recorded her son's telephone conversations within her home without the son's permission or knowledge. The son, upon reaching the age of majority, sued his mother for violating Title III. The Tenth Circuit noted that there were no cases addressing this situation and said that "[t]he closest analogy is where spouses have tapped one another, but that is still qualitatively different from a custodial parent tapping a minor child's conversations within the family home." Id. at 1535-1536. The Tenth Circuit declined to extend Title III's prohibition to parental wiretapping.

But the North Carolina Court of Appeals in *State v. Shaw*, 404 SE2d 887 (NC 1991), concluded that a mother's actions of taping her son's conversations on the family phone without his consent or knowledge violated Title III. In so holding, the Court found that the clear language of Title III provided for no express exception for electronic surveillance between family members. Id. at 888-889.

Turning to the instant case, OCGA § 16-11-62 (2) is clear and unambiguous: it is unlawful for *any person* to photograph another in a private place and out of public view. As the Supreme Court of Georgia has noted, OCGA § 16-11-62 was intended to protect all persons from an invasion of privacy. *Ransom*, supra. There is no express exception for family members. The victim, although a minor, certainly was of an age to understand that she has a right of privacy in certain situations. And, it is logical to conclude that a 16-year-old girl would expect some privacy, even from her parents or guardians, when she was nude in the bathroom. A jury could conclude from the evidence that Shelley Kelley's act of taking a photograph of the 16-year-old victim nude was a "casual or hostile intrusion or surveillance." OCGA § 16-11-60 (3).

Accordingly, we find that the evidence was sufficient for any rational trier of fact to find Shelley guilty of violating OCGA § 16-11-62 (2). See *Jackson*, supra.

3. The Kelleys assert that the trial court erred in admitting the hearsay testimony of Stacy Floyd, the victim's friend. As stated above, Floyd testified that approximately one to two weeks before the victim moved out of the Kelleys' house, the victim told her that she wanted to run away because "sometimes [Ronald Kelley] would tell her like take her clothes off or he would like try to like look at her and stuff like that." Floyd then testified that she spoke with her boyfriend in order to assist the victim in finding a place to stay.

We find that the victim's statement to Floyd amounted to a prior consistent out-of-court statement admissible as substantive evidence. *Knight v. State*, 210 Ga. App. 228, 230 (2) (435 SE2d 682) (1993). The victim testified that she left home because she was tired of Ronald Kelley touching her and looking at her. The Kelleys called into question the victim's veracity on this issue, highlighting throughout their cross-examination of the victim and their own testimony that just prior to the victim running away, they had restricted her social activities because she had violated curfew. The Kelleys also presented the testimony of Ronald Kelley's niece, who stated that before the victim ran away the victim told her that she was planning to leave because "she was tired of [the Kelleys] putting her on restriction. . . ."

"[W]here the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible."

*Edwards v. State*, 255 Ga. 149, 151 (2) (335 SE2d 869) (1985). The victim testified and was cross-examined relating to the circumstances surrounding her departure from the Kelleys' home. As her veracity was challenged by the Kelleys, her prior out-of-court statement to Floyd was admissible as substantive evidence of the matter asserted. *Knight*, supra; *Edwards*, supra.

4. The defendants assert that the trial court erred in admitting the photograph album containing nude pictures of themselves and their friends.

"Georgia law is abundantly clear that a photograph which is relevant and material to the issues in the case is not excludable on the ground that it would inflame the minds of the jurors to see it. [Cits.]" *Stevens v. State*, 242 Ga. 34, 38 (5) (247 SE2d 838) (1978). See also *Arnold v. State*, 166 Ga. App. 313, 316 (5) (304 SE2d 118) (1983) (" '[r]elevant photographs are admissible to describe a 'person, place or thing, for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case.' [Cit.]"). Furthermore, "[i]f evidence is relevant, no matter how slightly, it generally should be admitted and its weight left to the jury. [Cit.]" *Buckner v. State*, 209 Ga. App. 107, 108 (1) (b) (433 SE2d 94) (1993). The admissibility of photographs is left to the discretion of the trial court. *Arnold*, supra at 316.

During the trial, the victim testified regarding the Kelleys' propensity to be naked around the house. Several of the photographs showed the defendants naked inside their home. Also, the victim testified that Ronald told her it hurt when he had an erect penis and wore pantyhose, and one of the photographs showed Ronald with an erect penis, wearing only pantyhose and a bra. Accordingly, the photographs were relevant to the issues at trial concerning the Kelleys' conduct and assisted in corroborating the victim's testimony. *Arnold*, supra.

Moreover, the photographs were admissible to impeach Ronald Kelley, who claimed that he never walked around the house nude. OCGA § 24-9-82 ("[a] witness may be impeached by disproving the facts testified to by him."). Finally, the photographs were relevant and admissible to show Ronald Kelley's lustful disposition. See *Altman v. State*, 229 Ga. App. 769, 771 (4) (495 SE2d 106) (1997) ("[w]hen a defendant is charged with sexual offenses, pornographic videotapes and pictures found lawfully in his possession are relevant and admissible . . . to show defendant's lustful disposition. [Cit.]"); see also *Miller v. State*, 219 Ga. App. 213, 217-218 (2) (464 SE2d 621) (1995).

Accordingly, we do not find that the trial court abused its discretion in admitting the photograph album. See *Arnold*, supra.

5. The defendants also assert that the trial court erred in grant-

ing the State's motion in limine excluding the testimony of C. B. Dougherty regarding a prior false accusation the victim made against him. We disagree.

Evidence of prior false accusations of sexual misconduct made by the prosecutrix "is admissible to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur. [Cits.]" *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989). However, "[b]efore evidence of a prior false accusation can be admitted, the trial court 'must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists.' [Cit.]" *Ney v. State*, 227 Ga. App. 496, 498 (2) (489 SE2d 509) (1997). Defendants have "the burden of coming forward with evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of [sexual misconduct]." *Postell v. State*, 200 Ga. App. 208, 212 (4) (a) (407 SE2d 412) (1991), reversed on other grounds, 261 Ga. 842 (412 SE2d 831) (1992). Finally, a trial court's ruling upon the admissibility of such evidence will not be overturned absent an abuse of discretion. *Ingram v. State*, 211 Ga. App. 252, 255 (5) (438 SE2d 708) (1993).

In response to the State's motion, the Kelleys proffered the testimony of Dougherty concerning the alleged false accusation. Dougherty testified that the victim accused him of trying to make her wear a bathing suit and trying "to mess with her or something." While Dougherty denied the alleged accusations made against him, he admitted that he did not recall the victim's specific accusations.

The defendants also proffered the testimony of deputy sheriff Presley, who stated that when the victim complained to him about the Kelleys' conduct, she told him that on one occasion Dougherty gave her a bikini and that after she put it on, he fondled her genital area and played a pornographic movie. According to Presley, Dougherty was never charged with any crime.

In excluding evidence of the alleged false accusation, the trial court found that there was insufficient evidence to establish a reasonable probability of falsity. See *Ney*, supra. We agree. The only evidence tending to show falsity was Dougherty's denial of the allegations, but this evidence has limited value since Dougherty admitted he could not remember the specific allegations. And, the deputy sheriff's testimony that no charges were brought against Dougherty does not necessarily establish that the accusations were false, only that there was insufficient evidence to charge Dougherty. Accordingly, we do not find the trial court abused its discretion in excluding the evidence. *Ingram*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 2, 1998 —

Hagler, Hyles, Adams & McKenna, Clark C. Adams, Jr., Frank K. Martin, for appellants.

J. Gray Conger, District Attorney, Roger H. Anderson, Assistant District Attorney, for appellee.