## A03A2193. WILLIAMS v. THE STATE.
### (597 SE2d 621)

SMITH, Chief Judge.

Curtis Williams was found guilty by a jury of aggravated sexual battery, two counts of aggravated sodomy, two counts of child molestation, and two counts of aggravated child molestation. Judgments of conviction were entered on the jury's verdict, and Williams's motion for new trial was denied. The trial court granted Williams leave to file this out-of-time appeal, in which he contends the trial court erred by refusing to allow him to impeach the victim by cross-examining her about prior false accusations of child molestation and by denying his motion for mistrial. Finding no reversible error, we affirm the judgments.

Because of the parents' poor housekeeping skills and financial problems, the victim and her younger brother, who are Williams's minor children,[1] were removed from their home by the Carroll

---

[1] Although Williams denied paternity of the victim and was "not sure" whether the victim's younger brother was his biological child, the children's mother began living with Williams early in her pregnancy with the victim, and both children were raised as his.

County Department of Family and Children Services (DFACS) when the victim was not quite six years old. By that time, she had been sexually abused by her father many times. Williams had also made the younger brother fondle him.

Sometime after the children had been placed with foster parents, the foster mother noticed a discharge in the victim's panties. Although at first the victim was reluctant to talk to her foster mother about the abuse, after some urging by the foster mother she told the foster mother that her father had been abusing her and her younger brother.[2] The foster mother reported this to DFACS.

The victim and her brother were interviewed at DFACS. Libby Morrison, a child protective services investigator for DFACS, testified at trial that she had been involved with the Williams family before the children were taken from the home, trying to improve housekeeping and parenting skills, and she was still involved with the family when the children were removed. When the children were placed in foster care, a different caseworker took over, but Morrison became involved again when the abuse allegations surfaced. She interviewed the victim, who repeated her allegations regarding her father's sexual abuse. She also interviewed the younger brother twice. In the first interview, the brother denied any instance of abuse by his father. In the second interview, the brother admitted that his father had touched his private parts once, under his clothing, that on that occasion he touched his father's private parts as well, that at his father's request he had placed his father's penis in his mouth, and that his sister had witnessed this incident.

The investigation was turned over to the Carroll County Sheriff's Office, and Williams was subsequently arrested and charged.

At trial, the child's treating psychologist was qualified as an expert, and she testified that the victim was referred to her because the victim was displaying "inappropriate sexual behavior." She testified that the victim told her that her father began touching her when she was two or three years old. Using anatomical drawings, the victim indicated that he had both touched her and licked her, and that he had made her lick him. The psychologist also administered various psychological tests, and she testified that the results of those tests "were consistent with [the victim's] statements that she had been sexually abused." She described the victim's demeanor as "open and forthcoming" but also "emotionally detached," as if she had set aside the abuse experience but had "not really dealt with it."

---

[2] The victim told the foster mother, and later a DFACS caseworker that she enjoyed her father's licking and rubbing her, that it enabled her to sleep better, and she wanted to return home so that it could continue.

The State also presented testimony from two DFACS caseworkers, including Morrison, from the foster mother, from the victim's biological mother, and from the victim herself. Williams also testified, and he denied abusing the children.

1. Williams contends the trial court erred in refusing to allow him to impeach the victim by presenting evidence of her alleged prior false accusation or by cross-examining the victim regarding that incident.

> The Supreme Court of Georgia has held that Georgia's "rape-shield law," OCGA § 24-2-3, does not prohibit testimony of previous false allegations by the victim. Before such evidence can be admitted, however, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists. In this context, a reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Banks v. State*, 250 Ga. App. 728-729 (1) (552 SE2d 903) (2001). "Defendants have the burden of coming forward with evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of sexual misconduct." (Citations and punctuation omitted.) *Kelley v. State*, 233 Ga. App. 244, 251 (503 SE2d 881) (1998).

The defense advised the trial court before trial of its desire to present evidence of a prior false allegation, and the trial court conducted a hearing to determine whether these allegations had a "reasonable probability of falsity." The evidence presented showed that when DFACS investigator Morrison interviewed the victim, in addition to confirming that her father had abused her repeatedly, the victim also remembered that once, while visiting her aunt, her half-brother, David Haney, had touched her private area over her clothes while they were playing. The victim also told a sheriff's investigator about that touching, and the victim herself testified to the incident. Haney testified and denied the touching. In fact, he denied that he and the victim had ever been alone together.

The trial court ruled that the defense had not carried its burden of showing a reasonable probability that the victim's accusation against her half-brother was false. It is apparent that the court was faced with the conflicting testimony of the victim and her half-brother and found that of the victim more credible. Of course, "the fact that an accused states that the accusation against him is false is hardly evidence sufficient to raise a reasonable probability of falsity." (Punctuation omitted.) *Wagner v. State*, 253 Ga. App. 874, 878 (2) (560 SE2d 754) (2002). The trial court had the opportunity to observe the witnesses' demeanor and consider their interest in the case, and "a

trial court's ruling upon the admissibility of such evidence will not be overturned absent an abuse of discretion. [Cit.]" *Kelley*, supra, 233 Ga. App. at 251 (5). We do not find an abuse of discretion here.

Williams also asserts that the accusation must have been false because even though the victim reported it, Haney was never prosecuted. But this indicates only that insufficient evidence existed at the time for a charge to be brought; it does not address the truth or falsity of the accusation. This court has held a number of times that the fact that an accusation is not prosecuted is insufficient to establish its falsity. See, e.g., *Banks*, supra, 250 Ga. App. at 729 (1); *Mann v. State*, 244 Ga. App. 756, 759 (2) (536 SE2d 608) (2000); *Ingram v. State*, 211 Ga. App. 252, 255 (5) (438 SE2d 708) (1993).

2. Williams also maintains that the trial court erred by denying his motions for mistrial notwithstanding that several State's witnesses attempted to bolster the victim's credibility. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. It is well established that "[i]n no circumstance may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." (Citations and punctuation omitted.) *Price v. State*, 220 Ga. App. 176, 177 (2) (b) (469 SE2d 333) (1996).

Williams points to three instances in which he alleges that witnesses improperly bolstered the victim's credibility. In the first instance, Williams takes issue with the testimony of the child's treating psychologist that the results of her testing were "consistent" with the victim's statements that she had been sexually abused. He maintains that this testimony was improper bolstering. We do not agree. The testimony of experts that certain medical or scientific tests resulted in findings consistent with molestation does not violate OCGA § 24-9-80; it is admissible and proper. See, e.g., *Gosnell v. State*, 247 Ga. App. 508, 510 (2) (b) (544 SE2d 477) (2001); *Atkins v. State*, 243 Ga. App. 489, 494, 495 (533 SE2d 152) (2000).

Williams next challenges two portions of Morrison's testimony to which he objected.[3] Because the children were in foster care at the time Morrison undertook her investigation, a different DFACS caseworker was assigned, and the focus of that caseworker was on the plan for possible reunification. Morrison testified that her own investigation was primarily into the allegations of sexual abuse, and it was closed "with determination of substantiated sexual abuse." Williams immediately objected and moved for a mistrial. The trial court denied the motion but gave the jury curative instructions, telling it to disregard the testimony.

---

[3] Williams requested and was allowed a continuing objection, and he moved for mistrial.

In *Griffin v. State*, 221 Ga. App. 138 (470 SE2d 744) (1996) (physical precedent only), a DFACS caseworker testified similarly that she had "confirmed the allegations of sexual molestation of the victim by appellant." (Punctuation omitted.) Id. at 139-140 (2). We held there that because the witness then was questioned about what "confirming the allegations" meant and testified that it did "not necessarily mean that law enforcement has enough information to charge anybody" (punctuation and emphasis omitted), error did not result. Id. In *Amaechi v. State*, 254 Ga. App. 490 (564 SE2d 22) (2002) (full concurrence in Division 3), we found in the context of ineffective assistance of counsel that a reversal was not required when a law enforcement officer testified that his investigation substantiated the allegation against the appellant. Id. at 494 (3) (e). We held that when viewed in context, the officer was simply testifying as to why he obtained a warrant for appellant's arrest. Id. at 495. Here, as in *Griffin*, it is clear that the DFACS caseworker was not expressing an opinion regarding the truthfulness of the victim. She was testifying as to why her investigation was closed and why she did not continue to follow the family. And as in *Amaechi*, "it is not probable that the outcome would have been different if the questioned testimony had been excluded." Id.

Morrison was also asked about the victim's demeanor when she was interviewed. In responding, Morrison testified that the victim had been somewhat hesitant because the subject was uncomfortable for her, "but I didn't feel that it was at all a coached statement or anything like that. She seemed very truthful and honest about this." This answer was not responsive to the question asked, and we agree that it violated OCGA § 24-9-80. But the trial court gave an immediate curative instruction, informing the members of the jury that they were the only ones who could determine the truthfulness and honesty of the victim, that the witness was not permitted to testify to that, and that they were to disregard that testimony.

When "a motion for mistrial is made on the ground of inadmissible matters being presented to the jury, the corrective measure to be taken by the trial court is largely a matter of discretion, and where, as here, proper corrective measures are taken and there is no abuse of that discretion, a refusal to grant a mistrial is not error." (Citations and punctuation omitted.) *Samples v. State*, 227 Ga. App. 596, 597 (1) (490 SE2d 172) (1997). In addition to this curative instruction, the improper testimony was not responsive to the question, the victim's account remained consistent when she repeated it to several interviewers and was also consistent with her testimony at trial, and Williams had the opportunity to test the victim's memory and credibility before the jury during cross-examination. We conclude that

although it was error, it is highly probable that this testimony did not contribute to the jury's verdict. *Roberson v. State*, 241 Ga. App. 226, 229 (526 SE2d 428) (1999) (physical precedent only);[4] *Letlow v. State*, 222 Ga. App. 339, 343 (2) (474 SE2d 211) (1996). A mistrial was not mandated, and reversal is not required.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 25, 2004 — 

*Johnson, Word & Simmons, Gerald P. Word, Jason W. Swindle*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

[4] Although *Roberson* is physical precedent only, the special concurrence specifically notes that the testimony in issue did not contribute to the verdict. Id. at 231.