**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1284. WEINTRAUB v. THE STATE.

GOBEIL, Judge.

Joshua Weintraub, who faces prosecution for a single count of family violence-simple battery, filed a motion in limine to preclude the State from tendering a cell phone recording[1] of a dispute he had with his pregnant wife, arguing that the recording is inadmissible under OCGA § 16-11-62, Georgia's Eavesdropping Statute. The trial court denied the motion. We subsequently granted Weintraub's application for interlocutory review , and the instant timely appeal followed. For the reasons that follow, we vacate and remand the case with direction.

"A trial court's ruling on a motion in limine is reviewed for abuse of discretion." *Carver v. State*, 324 Ga. App. 422, 423 (750 SE2d 735) (2013) (citation

---

[1]The cell phone recording contained both video images and audio sounds.

and punctuation omitted). "[I]n reviewing the denial of a motion in limine, this Court must construe the evidence most favorably to the upholding of the trial court's findings and judgment, and we cannot reverse a trial court's ruling absent an abuse of discretion." *Brown v. State*, 316 Ga. App. 137, 139 (1) (728 SE2d 778) (2012) (citation, punctuation, and footnote omitted). "The trial court's application of the law to the undisputed facts is subject to de novo review." *State v. Barnard*, 321 Ga. App. 20, 20 (740 SE2d 837) (2013) (citation and punctuation omitted). So viewed, the relevant facts show that in January 2018, Kenneth Jeter was temporarily staying with Weintraub and his wife, Rebecca Weintraub ("Rebecca"), in the Weintraub's two-bedroom apartment. Jeter worked at a Long John Silver's restaurant and Weintraub was his manager. Jeter did not have his own room in the Weintraub's apartment. Rather, he slept on the couch in the living room.

Jeter had been staying with the Weintraubs for the three weeks leading up to the incident at issue here while he looked for a place of his own. During this period, Jeter slept at the residence nightly and kept the belongings he "had on [him]" there, including bags of clothing, toiletries, and other possessions that he kept by the couch. Jeter was not named on the lease for the Weintraub apartment, did not pay rent or utilities, did not receive his mail there, and did not have any furniture in the home.

2

On January 11, 2018, Jeter was sitting on the couch in the living room and texting with his girlfriend on his cell phone.[2] Weintraub and his wife, who were also in the living room, began arguing. At some point, Jeter decided to record portions of the argument between the Weintraubs, which Jeter described as amounting to "[v]erbal abuse." Jeter also feared that the argument might "become physical." Specifically, Jeter testified as follows:

> When I was sitting on the couch, I was texting my girlfriend at the time and just regularly talking. Whenever I saw the opportunity to take that recording, I just kind of lifted up my phone to where it was viewable but not noticeable.

Jeter clarified that he did not try to hide his phone by placing it in a corner or covering it with a cushion or blanket. He continued to hold his phone as if he was texting while he recorded the interaction between Weintraub and his wife in the living room. Jeter did not know if his phone was noticeable because he was holding his phone in front of his mid-section, but "[i]t wasn't like [he] was trying to hide it." Jeter stated that neither Weintraub nor his wife asked him to record the interaction or consented to being recorded, and neither of them gave Jeter any indication that they

---

[2] At the time, Jeter had a Samsung Galaxy J3 smartphone, which was capable of recording audio and video.

3

were aware that he was recording them on his phone. Moreover, Jeter did not tell the couple after the fact that he had recorded the interaction. Jeter indicated he previously had recorded the Weintraubs in their home. Specifically, he described that on "days when everything would be okay, and . . . we would just be joking around and having a good time," he would "pull out [his] camera and start recording the funny things we would say or jokes we would be making and stuff like that."

Jeter intended to give the recording to the police "in case things got bad and the law got called out there." Jeter called 911 later that night to report that Rebecca appeared to be experiencing labor pains.[3] He then called the police the following morning and met with them to show them the videos he had captured on the cell phone.

Weintraub was later charged by accusation with one count of family violence-simple battery, which alleged that Weintraub "did unlawfully . . . intentionally make contact of an insulting and a provoking nature" with his wife.[4] Weintraub filed a motion in limine, challenging the admissibility of the cell phone recording. According

---

[3] Rebecca was pregnant at the time with twins.

[4] The parties agree that Jeter reported to law enforcement that Weintraub pulled his wife's hair during the course of the dispute, although this was not captured on the recording.

4

to Weintraub, because neither he nor his wife had consented to being recorded within the privacy of their own home, the audio recording was inadmissible under OCGA § 16-11-62 (1). He further asserted that the video portion of the recording should be excluded because Jeter did not have the consent of all the persons observed and none of the exceptions provided by OCGA § 16-11-62 (2) (A) - (D) applied because, as relevant here: (1) Jeter was not an owner or occupier of the property, (2) the apartment where the recording took place was not Jeter's residence, (3) Jeter was not attempting to prevent a crime, and (4) the Weintraubs had a reasonable expectation of privacy in their own living room.

At the hearing on Weintraub's motion in limine, the State played a recording of two 15-second clips taken from Jeter's cell phone. As noted by the trial court, the recording depicts "Weintraub as speaking in a loud, harsh tone of voice and using obscene language while standing in close proximity to [Rebecca]." The recording does not show any physical contact between Weintraub and his wife.

The trial court denied Weintraub's motion in limine to exclude the cell phone footage, construing the recording as separate audio and video recordings. First, the court ruled that the audio portion of the recording was admissible, finding that "recording with an exposed smartphone [does not] constitute[] recording 'in a

5

clandestine manner,'" as contemplated by OCGA § 16-11-62 (1). Specifically, Jeter was holding his phone in the same manner as if he was sending a text message, and although neither of the Weintraubs consented to or knew that they were being recorded, "either of them would have been able to see the smartphone had they been looking for it." Next, the trial court concluded that the video portion of the recording was admissible, holding that (1) Jeter was an "occupier" of the apartment, as he had been invited to stay at the property, and recorded the argument between the Weintraubs for the purpose of crime prevention pursuant to OCGA § 16-11-62 (2) (B); and (2) Jeter was a "resident" in the apartment and the activities he recorded were within the curtilage of the residence and the recording was made for the purpose of crime prevention pursuant to OCGA § 16-11-62 (2) (C).[5] The court further noted that "because Mr. Jeter was invited to stay at the property and sleep in the living room by the Weintraubs[,] [t]he Weintraubs did not have a reasonable expectation of privacy with respect to Mr. Jeter and his activities." The court certified its order for

---

[5] The trial court's order contains a scrivener's error. The court cites to OCGA § 16-11-62 (2) (A), while quoting language from OCGA § 16-11-62 (2) (B). Similarly, the court cites to OCGA § 16-11-62 (2) (B), while quoting language from OCGA § 16-11-62 (2) (C).

6

immediate review, and we subsequently granted Weintraub's application for interlocutory review. The instant appeal followed.

Georgia's Eavesdropping Statute provides that "[n]o evidence obtained in a manner which violates any of the provisions of [the Eavesdropping Statute] shall be admissible in any [Georgia] court[.]" OCGA § 16-11-67. Code Section 16-11-62, formerly Code Ann. § 26-2002, was enacted in 1967. The legislature defined the purpose of the statute as follows:

> It is the public policy of this State and the purpose and intent of this Chapter to protect the citizens of this State from invasions upon their privacy. This Chapter shall be construed in light of this expressed policy and purpose. The employment of devices which would permit the clandestine overhearing, recording or transmitting of conversations or observing of activities which occur in a private place has come to be a threat to an individual's right of privacy and, therefore, should be prohibited. It is further the purpose of this Chapter to provide to authorized law enforcement officers modern methods of crime detection and prevention under strict procedures and safeguards.

*Ransom v. Ransom*, 253 Ga. 656, 658 (1) (324 SE2d 437) (1985) (citing former Code Ann. § 26-2001, Ga. L. 1967, pp. 844, 845).

"Eavesdropping is an ancient practice which at common law was condemned as a nuisance." *Berger v. New York*, 388 U. S. 41, 45 (II) (87 SCt 1873, 18 LE2d

1040) (1967). At one time the eavesdropper listened by naked ear under the eaves of a house or at its windows or beyond its walls seeking out private discourse. Id. In 1967, in *Berger*, the United States Supreme Court recognized that technological advances had yielded sophisticated electronic devices capable of eavesdropping under almost any condition by remote control. Id. at 46-47 (II). At that time, the Court was concerned with devices suitable to an Ian Fleming novel such as miniature microphones (no bigger than a postage stamp) and "electronic rays" beamed at walls or glass windows to record voice vibrations. Id. at 47 (II). The Court could not have imagined the eavesdropping potential in the modern cell phone. See, e. g., *Riley v. California*, 573 U. S. 373, 393 (III) (B) (1) (134 SCt 2473, 189 LE2d 430) (2014) (describing in detail the multitude of features of modern cellphones as well as noting their pervasiveness in modern society).

In the instant case, the trial court addressed the admissibility of the audio and video segments of the cell phone recording separately.[6] Weintraub challenges both

---

[6] Because OCGA § 16-11-62 addresses audio and video recordings separately, in cases of a recording with both audio and video images, one portion of the recording could be admissible under the statute even if the other portion is ruled inadmissible. Cf. *Durham v. State*, 309 Ga. App. 444, 447-448 (3) (710 SE2d 644) (2011) (Any error by trial counsel for failing to move to exclude the video portion of surveillance footage by an audio/visual recorder did not prejudice the defendant where the audio recording of the footage was admissible).

holdings on appeal. As an initial matter, the admissibility of a cell phone recording pursuant to OCGA § 16-11-62 appears to be one of first impression in Georgia.[6] Our analysis, therefore, necessarily begins with the language of the statute. See *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) ("[a] statute draws its meaning, of course, from its text"). Under OCGA § 16-11-62 (1), it is unlawful for "[a]ny person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place[.]" Next, with respect to video recordings, OCGA § 16-11-62 (2) precludes persons from observing, photographing, or recording "the activities of another which occur in any private place and out of public view[.]" There are four exceptions to the prohibition under OCGA § 16-11-62 (2), including recordings made: (1) in a correctional facility; (2) by the owner or occupier of real property for security purposes and crime prevention; (3) within the curtilage of a residence of the person using such device for security or crime prevention purposes; and (4) by law enforcement in the performance of official duty. See OCGA § 16-11-62 (2) (A) - (D).

---

[6] Despite the proliferation of cell phones over the past decade, there is a surprising dearth of cases addressing the admissibility of recordings made on a cell phone, even from other jurisdictions.

9

In determining the scope of conduct covered by OCGA § 16-11-62 (1) & (2), we presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To that end, we afford the statutory text "its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173 (1) (a) (citation and punctuation omitted). See also OCGA § 1-3-1 (b) ("[i]n all interpretations of statutes, the ordinary signification shall be applied to all words"). This Court is required to read a particular statute as a whole, considering specific words and phrases not in isolation, but in relation to each other. *Warren v. State*, 294 Ga. 589, 590 (1) (a) (755 SE2d 171) (2014). As our Supreme Court has explained:

> [i]n our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.

*Fed. Dep. Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (citation and punctuation omitted).

10

1. Our analysis of the admissibility of both the audio and video portions of the cell phone recording necessarily begins with a determination of whether the recording occurred "in a private place." See OCGA § 16-11-62 ("It shall be unlawful for: (1) Any person in a clandestine manner intentionally to overhear, transmit, or record . . . the private conversation of another which shall originate in any *private place*; (2) Any person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any *private place* and out of public view[.]") (emphasis supplied).

A "private place" is defined as "a place where there is a reasonable expectation of privacy." OCGA § 16-11-60 (3). Our Supreme Court recently had the occasion to address the meaning of "private place," in the context of a home for purposes of OCGA § 16-11-62 (2), in *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017), pursuant to an earlier version of OCGA § 16-11-60 (3).[7] The relevant facts of that

[7] The statute was amended effective July 1, 2015. Prior to this date, a "private place" for purposes of OCGA § 16-11-62 was defined as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." OCGA § 16-11-60 (3) (2014). Neither our Supreme Court nor this Court has yet to have an occasion to address the scope of the definition of "private place" following this amendment. In *Cohen*, the Supreme Court utilized a prior version of the statute because the conduct at issue there took place in 2012. 302 Ga. at 616. More recently, we considered whether a defendant was in a "private place," for purposes of OCGA § 16-11-62 (2), while she was unaccompanied in a police

11

case involve a housekeeper who was having an affair with her employer. Id. at 616. She later used a "spy" camera to secretly record video of her employer naked in his bathroom and bedroom, as well as video of a sexual encounter between the two of them in a bedroom, which her attorney sought to use to gain a settlement in a proposed sexual harassment suit. Id. The housekeeper and her lawyer subsequently were charged with several crimes, including violating OCGA § 16-11-62 (2) for illegally recording the sexual encounter. Id. The trial court granted a demurrer to the indictment, finding that OCGA § 16-11-62 (2) was unconstitutionally vague. Id. at 616-617. Our Supreme Court reversed this ruling, and in so doing clarified what the statute prohibits, which is the recording of activities that "occur in any private place and out of public view without the consent of all persons being observed." Id. at 628 (2) (b) (punctuation omitted). As relevant here, the Supreme Court explained that it typically has looked to Fourth Amendment jurisprudence[8] as a guide when

interview room. *Wilson v. State*, 351 Ga. App. 50, 52 (1) (830 SE2d 407) (2019). In that case, we also used the prior version of OCGA § 16-11-60 (3) because the recording at issue there occurred in 2013. Id. at 52 (1) n. 4.

[8] It is unclear whether OCGA § 16-11-62 can bear the weight of the Fourth Amendment when addressing the behavior of private parties and not of the government. In fact, the one Georgia case that has examined the potential distinction between privacy from strangers and privacy from family members or other close parties, is one that specifically concluded that "there is almost a total lack of

12

determining "the scope of privacy protected by OCGA § 16-11-62."[9] Id. at 629 (2)

(b). See *Burgeson v. State*, 267 Ga. 102, 106-107 (3) (d) (475 SE2d 580) (1996);

---

authority" addressing parental wiretapping, which was the closest Fourth Amendment analog that the court could identify. *Kelley v. State*, 233 Ga. App. 244, 248-249 (2) (503 SE2d 881) (1998), disapproved on other grounds by *State v. Burns*, 306 Ga. 117, 124 (2) (829 SE2d 367) (2019). The Court instead looked to an earlier Georgia case interpreting OCGA § 16-11-62 without any reference at all to the Fourth Amendment. Id. (citing *Ransom*, 253 Ga. at 658).

[9] The Supreme Court was fractured in its analysis. In special concurrences, several justices questioned the applicability of Fourth Amendment jurisprudence.

*Quintrell v. State*, 231 Ga. App. 268, 269-271 (1) (499 SE2d 117) (1998).[10] In this

regard,

> the application of the Fourth Amendment depends on whether the
> person invoking its protection can claim a "justifiable," a "reasonable,"
> or a "legitimate expectation of privacy that has been invaded." This
> inquiry normally embraces two discrete questions. The first is whether
> the individual, by his conduct, has exhibited an actual (subjective)
> expectation of privacy — whether the individual has shown that he
> seeks to preserve something as private. The second question is whether

---

[10] It remains an open question whether one's reasonable expectation of privacy under OCGA § 16-11-62 (2) is *limited* to the parameters set forth in Fourth Amendment jurisprudence. As noted by the Supreme Court in *Cohen*, "the Fourth Amendment is concerned with stopping unauthorized intrusion by the government by any means into areas where a person has a reasonable expectation of privacy, whereas OCGA § 16-11-62 (2) is concerned with stopping unauthorized intrusion by all persons through the specific means of non-consensual photographing or video recording of their activities." *Cohen*, 302 Ga. at 629 (2) (b) n. 12 (emphasis omitted). As a result, "[i]t may very well be true that a person had a greater expectation to be free from the specific hostile intrusions of being video recorded or photographed under Georgia statutory law than he or she would have to be free from government intrusion for Fourth Amendment purposes." Id. (applying the pre-2015 definition of "private place") (emphasis omitted). The *Cohen* Court declined to reach this issue due to the specific facts at issue in that case. Id. The Court further declined to address "whether, by amending the statute in 2015 to define 'private place' as 'a place where there is a reasonable expectation of privacy' (OCGA § 16-11-60 (3)), the legislature intended for the definition of 'private place' under OCGA § 16-11-62 (2) to only reference the 'reasonable expectation of privacy' that one would have under the Fourth Amendment" because the language under the 2015 amendment was not at issue in that case. Id.

14

the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable — whether the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

Id. at 630 (2) (b) (citations and punctuation omitted).

We have recognized that one's home is one's castle and "[t]he storm and wind may enter, but the King cannot enter, and all the forces of the Crown cannot cross the threshold of his ruined tenement." *Hogan v. State*, 140 Ga. App. 716, 716 (231 SE2d 802) (1976). See also *Florida v. Jardines*, 569 U. S. 1, 6 (II) (A) (133 SCt 1409, 185 LE2d 495) (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.") (citation and punctuation omitted). Accordingly, even under the Fourth Amendment, there exists a fundamental expectation of privacy "against unreasonable intrusions into the home." *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002) (citations and emphasis omitted). This protection, however, is not absolute. "For Fourth Amendment purposes, one who begins with a reasonable expectation of privacy in a particular area such as his or her residence can lose that expectation of privacy by inviting a guest into that otherwise private place." *Cohen*, 302 Ga. at 630

15

(2) (b). See, e.g., *United States v. Davis*, 326 F3d 361, 363, 366 (2d Cir. 2003) (defendant did not have reasonable expectation of privacy to prevent being video-recorded with hidden camera in jacket of confidential informant after inviting confidential informant into his residence to sell drugs to the informant); *State v. Almand*, 196 Ga. App. 40, 41 (395 SE2d 609) (1990) (because defendant invited off-duty officer into her apartment, she had no reasonable expectation of privacy).

"However, a person does *not* lose one's reasonable expectation of privacy simply when he or she invites a family member or someone who is more akin to being a member of the household into a place where one has a reasonable expectation of privacy." *Cohen*, 302 Ga. at 630-631 (2) (b) (emphasis in original). See also OCGA § 16-1-3 (15) (defining "public place" as used in Title 16 as "any place where the conduct involved may reasonably be expected to be viewed by people *other than members of the actor's family or household*") (emphasis supplied). Moreover, a homeowner does not lose his or her reasonable expectation of privacy in those areas of the home that they intend to remain private. See *Moses v. State*, 328 Ga. App. 625, 628 (2) (a) (760 SE2d 217) (2014) (homeowner did not lose reasonable expectation of privacy "by allowing persons such as household residents, family members of residents, or housecleaners access to the house"); *Cohen*, 302 Ga. at 616, 631-632 (2)

16

(b) (holding that indictment sufficiently alleged that the recording took place in a "private place out of public view," where the housekeeper used a hidden "spy" camera to record her employer in his bedroom and bathroom). See also *Kelley v. State*, 233 Ga. App. 244, 247-249 (2) (503 SE2d 881) (1998), disapproved on other grounds by *State v. Burns*, 306 Ga. 117, 124 (2) (829 SE2d 367) (2019) (sixteen-year-old girl had a reasonable expectation of privacy against her own family members when she was passed out nude in the family's home bathroom in the act of or following bathing). However, context matters. For instance,

> a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.

*Katz*, 389 U. S. at 361 (Harlan, J. concurring) (citing *Hester v. United States*, 265 U. S. 57 (44 SCt 445, 68 LEd 898) (1924)).

Here, the trial court failed to make specific findings addressing whether Jeter's recording of the Weintraubs on his cell phone took place in a "private place" with respect to both the audio and video portions of the recording. First, as to the audio

17

recording, the trial court rested its conclusion solely on whether Jeter's recording was done "in a clandestine manner" under OCGA § 16-11-62 (1), without first addressing whether the recording occurred in a "private place." Similarly, the trial court jumped to whether the video portion of the recording fell within an exception listed in OCGA § 16-11-62 (2) (A) - (D) without first analyzing the threshold issue of whether the recording took place in a "private place."[11] We are mindful that a determination of whether the recording occurred in a "private place" constitutes a mixed question of law and fact. See *Slayton v. State*, 281 Ga. App. 650, 650-651 (1) (637 SE2d 67) (2006) ("[A] trial court's ruling on a motion to suppress frequently involves a mixed question of fact and law.") (citation omitted). Nevertheless, our Supreme Court has advised that, as an appellate court, "[w]e must focus on the facts found by the trial court in its order, as the trial court sits as the trier of fact." *Williams v. State*, 301 Ga. 60, 61-62 (799 SE2d 779) (2017) (the Court of Appeals cannot make additional factual findings beyond those contained in the trial court's order, and, where those are

---

[11] Within the context of addressing whether Jeter was an "occupier" of the property and recorded the interaction for crime prevention or detection purposes, pursuant to the exception outlined in OCGA § 16-11-62 (2) (B), the trial court summarily concluded that because the Weintraubs had invited Jeter to stay in their apartment and sleep in their living room, they "did not have a reasonable expectation of privacy with respect to Mr. Jeter and his activities."

18

insufficient to enable appellate review, remand is warranted) (citation and emphasis omitted). See also *Slayton*, 281 Ga. App. at 651 ("As a reviewing court, we must accept the factual and credibility determinations and inferences drawn by the trier of fact, even if we disagree with them, as long as there is evidence in the record to support the trial court's findings.") (citation omitted).

Our Supreme Court has instructed that we may remand for further factual findings where the trial court's order lacks sufficient detail to enable meaningful appellate review. See *Martinez v. State*, 347 Ga. App. 675, 684 (C) (ii) (820 SE2d 507) (2018); see also *Williams*, 301 Ga. at 62 ("Given the uncertainty in the trial court's order regarding the basis for its ruling, this Court must vacate the opinion" and "remand this case to the trial court for further clarification on the specific findings that form the basis for its legal conclusions.") (citation omitted). In light of these constraints, we conclude that the trial court's order denying Weintraub's motion in limine lacks the necessary specific findings to enable our review as to whether Jeter's cell phone recording took place in a "private place." Accordingly, given the fact-intensive nature of this analysis, and in an abundance of caution, we vacate the trial court's order and remand for the court to make necessary findings in the first instance on whether Jeter's cell phone recording took place in a "private place." See

19

*Martinez*, 347 Ga. App. at 685 (C) (ii); *Williams*, 301 Ga. at 62. See also *Stroud v. State*, 344 Ga. App. 827, 834 (3) (812 SE2d 309) (2018) (reversing denial of motion to suppress and remanding for determination of factual questions necessary to decide that motion). If the trial court concludes that an additional evidentiary hearing is necessary to resolve these issues, it may conduct such a hearing.

2. Given our decision to vacate the trial court's order on the motion in limine, we do not address Weintraub's remaining arguments. Nevertheless, if the trial court concludes that the cell phone recording took place in a "private place," the court will then have to determine whether, at least with respect to the audio portion of the recording under OCGA § 16-11-62 (1), Jeter's recording was done in a "clandestine manner." The statute does not define the word "clandestine." See OCGA § 16-11-60. When looking for the generally understood or common meaning of a particular word, courts most often look to dictionary definitions. See, e. g., *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014); *Warren*, 294 Ga. at 590-591 (1) (a). The Oxford English Dictionary defines "clandestine" as "[s]ecret, private, concealed; usually in bad sense, implying craft or deception; underhand, surreptitious." Oxford English Dictionary, OED Online http://www.oed.com/view/Entry/33737 (Oct. 28, 2019). In turn, "conceal" is defined in pertinent part as "[t]o keep (information,

20

intentions, feelings, etc.) from the knowledge of others; to keep secret from . . . others; to refrain from disclosing or divulging." Id., OED Online http://www.oed.com/view/Entry/38066 (Oct. 28, 2019) (emphasis omitted). Webster's Dictionary similarly defines "clandestine" as "conducted with secrecy and concealment." Webster's Third New International Dictionary, 415 (1981). Additionally, Webster's defines "conceal" in relevant part as "to prevent disclosure or recognition of[,] avoid revelation of[,] refrain from revealing[,] withhold knowledge of[.]" Id. at 469. Finally, Black's Law Dictionary defines "clandestine" as "[s]ecret or concealed, [especially] for illegal or unauthorized purposes." Black's Law Dictionary, 284 (9th Ed. 2009).

At the hearing, Jeter testified that he started recording the escalating conflict between the Weintraubs in their living room by holding his cell phone in front of his midsection, where it was "viewable but not noticeable." Jeter did not attempt to conceal or hide his phone while it was recording the confrontation between Weintraub and his wife. There is no dispute that the Weintraubs did not consent to being recorded in their living room on the night in question, and neither of them gave Jeter any indication that they were aware that he was recording them on his phone. The trial court concluded that recording with an exposed smartphone (known to be

21

capable of recording, among numerous other functions) does not constitute recording "in a clandestine manner." However, this conclusion does not end the inquiry with respect to the admissibility of the audio portion of the recording. It is undisputed that Jeter's smartphone itself, as the trial court concluded, was viewable and not clandestine. However, the statute does not hinge upon whether the recording device was clandestine, but rather whether the "record[ing]" was done "in a clandestine manner." OCGA § 16-11-62 (1). For instance, under the facts of this case, could Jeter's act in switching from texting with his girlfriend to recording the couple's interaction on his smartphone be considered "clandestine?" Here, the trial court made no findings as to whether the *manner* in which Jeter was recording was clandestine, considering the greater factual context.

On remand, if necessary to address this issue, the trial court should consider whether any of the facts of this case, including Jeter's act of switching modes on his cell phone while holding his phone as if he were still texting, is of significance with respect to whether the recording was done in "a clandestine manner." If the court needs supplemental evidence to determine this issue, it may hold another hearing.

*Judgment vacated and case remanded with direction. Dillard, P. J., and Hodges, J., concur.*

22